[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 480 
There is considerable diversity of sentiment among the courts of the different States as to the nature of the contract implied by a blank indorsement of a negotiable note before delivery to the payee. In some of the States such an indorser is primafacie regarded as a guarantor, in others an indorser, and in others a joint promisor. (Parsons on Notes, 119, and notes e, f,g, and cases there cited; 40 N.Y., 492, reporter's note.) In this State, it has been repeatedly held, and is too strongly settled by authority to be disturbed, that a person making such an indorsement is presumed to have intended to become liable as second indorser, and that on the face of the paper, without explanation, he is to be regarded as second indorser, and, of course, not liable upon the note to the payee, who is supposed to be the first indorser. (12 J.R., 159; 17 id., 826; 87 N.Y., 614; 50 id., 69.) As the paper itself furnishes only prima facie
evidence of this intention, it is competent to rebut the presumption, by parol proof that the indorsement was made to give the maker credit with the payee. (Id.) Such, among others, was the case of Moore v. Cross (19 N.Y., 227), where the indorsement was *Page 482 
made to enable the maker to purchase coal of the payee; and it was held that the person making it was liable as first indorser, and that the payee could maintain an action against him upon the note, or, if the payee transferred it, he might indorse it without recourse.
In this case the judge before whom it was tried found that the note was indorsed by the defendants' intestate at the maker's request, and to enable him to purchase of the payee $5,000 of United States bonds, and that the note was used for that purpose, and it is insisted by the learned counsel for the defendants, that there was no evidence to justify this finding. We are called upon, therefore, not to determine the fact, but to say whether the circumstances proved were sufficient to justify the inference that the fact existed, or, in other words, whether the evidence tended to prove it; if so we are foreclosed by the finding. The principal facts bearing upon this point were, that the defendants' intestate and the maker were brothers, and that for three years respectively, prior to the making and delivering of the note in question, the maker had borrowed of the payee the same bonds, and secured their return each year by a note of $5,000, signed by himself and the defendants' intestate as makers, the latter being surety, and that as each note was delivered, the prior note was taken up, and that when the note in suit was delivered the bonds were purchased, and the last note given for the loan of the bonds was taken up.
The defendants' intestate had been for three years the surety to the payee for his brother in respect to the bonds. The form of that paper indicated that it was intended to be used to obtain a credit with the payee, and the surety was chargeable with notice of that purpose, and when he became surety upon the fourth note, although in a different form, for the same amount at the end of the last year, is it not a legitimate inference that he knew the purpose of this note, and supposed that it was to be used, as it was, to take up his other note and obtain a like credit? The change in form of the suretyship to that of indorser is not inconsistent with such *Page 483 
inference. This may have been done to secure notice of demand and non-payment. In substance the transaction was a continued suretyship for the benefit of the maker to procure a credit with the payee. The notes were alike in all respects, and given at regular intervals, and the presumption of an intention to become an indorser to the payee seems a reasonable, if not an irresistible one. It is not necessary that the indorser should know the precise nature of the credit to be procured. It is sufficient that he knows that a credit is to be obtained of the payee. If he supposed that the bonds were to be again loaned instead of purchased, the intention to become a second indorser would be as effectually repelled as if he knew they were to be purchased. If he signed as surety or indorser to the payee he did not sign as second indorser, and we think the circumstances sufficient at least to change the onus upon that question, and that the judge might properly infer that he intended to continue to do what he had for three years before done, viz., to become surety for his brother to the plaintiff for $5,000, and that the circumstance of changing the form of executing the paper ought not to impair the force of the inference.
This intention is confirmed by the terms of the note. It ran a year, which is longer than ordinary commercial paper, and it was payable at the house of the payee, thus indicating a purpose or expectation that the payee would hold it until it was due, a circumstance inconsistent with the idea that the payee was to become a mere indorser.
It is also objected that the plaintiff had no title to the note, it having been assigned to one Merriam on the 27th of June, 1872. The assignment provides in effect that it is not to prejudice the collection of the note against the indorser, thereby evincing an intention not to part with or relinquish this claim, and to make the transfer subordinate to it. It is unnecessary to consider whether the obligation against the maker and indorser could be separated, and owned by different persons, or whether, if not, the transfer or the reservation would be nugatory. It is evident that the transfer was for a particular *Page 484 
purpose, and was one of the steps taken to effect a compromise of the demand against the maker which the defendants had consented to in writing. On the same day of the assignment an indorsement was written by Merriam and signed by the plaintiff's attorney on the note acknowledging the receipt of the percentage agreed upon, and discharging in terms all claim on the note, but without prejudice to the claim against the indorser and the note was retained by the plaintiff. Merriam was acting in the interest of, and for the benefit of the maker, and he could not have enforced the note against the maker beyond the amount paid. The maker had gone into bankruptcy and the transfer to Merriam was for the purpose of enabling him to represent all the creditors, in procuring a title to the property held by the assignee in bankruptcy, which it seems he did under an order of the court. In substance the transaction was that Merriam took the property of the maker and advanced to the creditors the percentage agreed upon to compromise the debts, and the legal effect of it is in no respect different as to these defendants than it would have been if he had paid the money himself. The transfer might have been more explicit, but an examination of all the papers leaves no room for misapprehension as to the character of the transaction. The compromise was for the benefit of, and at the instance of, the defendants, and although some circumlocution became necessary in consequence of the bankrupt proceedings, the same result was attained, as though it had been accomplished directly with the maker, and they have no reason to complain. Indeed it might be inferred that they contemplated this mode of doing the business, when they gave their consent. At all events they have not been injured by the course pursued.
The judgment must be affirmed.
All concur, except GROVER, J., dissenting.
Judgment affirmed. *Page 485