FIRST NAT. BANK OF WORCESTER, MASSACHUSETTS, *v.* LOCK-STITCH
FENCE CO. and others.

CENTRAL NAT. BANK OF MASSACHUSETTS *v.* SAME.

*(Circuit Court, N. D. Illinois.    May, 1885.)*

1. PROMISSORY NOTES—LIABILITY OF INDORSER AT TIME OF EXECUTION AND BE-
    FORE DELIVERY—NOTE AS EVIDENCE—RULE IN UNITED STATES COURTS—
    ILLINOIS STATUTE.
        A third party who places his name upon the back of a negotiable promis-
    sory note at the time of its execution by the maker, and before its delivery to
    the payee, will be liable as a joint maker, and the note itself, with the indorse-
    ment thereon, is *prima facie* evidence of such liability.    *Good* v. *Martin*, 95 U.
    S. 90, followed.
2. SAME—EFFECT OF DECISIONS OF STATE COURT.
        The question of the liability of such a party is one of general commercial
    law, and the decisions of the courts of the state in which the note is executed
    and made payable are not necessarily controlling in the decision thereof by a
    United States court.
3. SAME—EVIDENCE.
        The evidence in this case *held* not to overcome or change the *prima facie* case
    made by the introduction of the note, and judgment entered for plaintiff against
    all of the defendants as jointly liable upon the notes in suit.

These were two suits upon promissory notes, one for $2,121, and
the other for $1,123.59, both dated January 1, 1884, due 12 months
after date, and payable to the order of Washburn & Moen Manu-
facturing Company, at the First National Bank of Joliet, Illinois.
The plaintiff in each case is a banking corporation, organized under
the laws of the United States, and located in Massachusetts.    The
defendants are citizens of Illinois, the defendant Lock-Stitch Fence
Company being a corporation, having its principal office and place of
business at Joliet.    The declaration in each case contained a single
count, in which the defendants were charged as joint makers of the
note set out in the declaration, and as such jointly liable to the plain-

tiffs thereon. To each declaration there was originally a plea of the general issue. Amended pleas were subsequently filed, in which it was averred that the defendants were not and never were jointly liable in respect to the several supposed causes of action in the declaration mentioned. or any or either of them, which pleas were duly verified.

It is provided by section 36 of the practice act of Illinois (chapter 110, Cothran's Annotated Ed. 1883, Rev. St. Ill.) that "in actions upon contracts, express or implied, against two or more defendants as partners or joint obligors or payors, whether so alleged or not, proof of the joint liability or partnership of the defendants    *    *    *    shall not, in the first instance, be required to entitle the plaintiff to judgment, unless such proof shall be rendered necessary by pleading in abatement, or unless the defendant shall file a plea in bar denying the partnership or joint liability, or the execution of the instrument sued upon, verified by affidavit." The notes in suit were executed and were payable in Illinois. On the face of each note appeared the signature of the defendant Lock-Stich Fence Company, by L. E. Dillman, treasurer, as the maker thereof; and on the back of each were the following indorsements in the following order: L. E. Dillman, A. H. Shreffler, A. N. Kleinfelter, A. Dillman, Washburn & Moen Manufacturing Co., P. L. Moen, Treasurer.

These cases came on for trial together, before the court and jury, and the plaintiff in each case, in the first instance, offered in evidence the notes sued on, with the indorsements thereon in the order stated. Objection was made to the introduction of the notes in evidence unless they should be supplemented by affirmative proof that the defendants were joint makers, it being contended by counsel for the defendants that the notes themselves were not to any extent evidence of joint makership. The court admitted the notes in evidence, but without then passing upon the question of their sufficiency as proof of the defendants' alleged joint liability. The plaintiff then called as a witness the defendant Andrew Dillman, by whom it was shown that on January 1, 1884, all the defendant indorsers were stockholders of the Lock-Stitch Fence Company; that the witness was president, that L. E. Dillman was treasurer, that A. H. Shreffler was vice-president, and that A. N. Kleinfelter was secretary, of the company. The witness also testified that these parties held all the stock of the company, and constituted its officers at the time of the execution of the notes. This testimony was all objected to, and taken subject to the objection.

On cross-examination of the witness, it was shown that the debt for which the notes were given was one owing by the Lock-Stitch Fence Company to the payee of the notes. Upon the conclusion of the examination of this witness, the plaintiffs rested, and the defendants then moved the court that the jury be instructed to render a verdict in their favor, on the ground that the defendants were not

shown to have been joint' makers of the notes. The court reserved its ruling on this motion for the time being; and it appearing that the cases really involved no controverted issues of fact, but that their determination turned upon the view which the court should take of the legal principles invoked upon the question of liability, it was stipulated by the parties that the trial should proceed before the court, without the intervention of a jury, with the understanding that the defendants should have the same benefit of the motion for a peremptory instruction to the jury in their favor that they would have if a jury were still present. Certain of the defendants were thereupon called as witnesses, and testified that at the time these notes were given the Lock-Stitch Fence Company was solvent; that the notes were given in part settlement of an indebtedness then owing by the company to the Washburn & Moen Manufacturing Company, and not for or on account of the individual debt of the defendant indorsers, or any of them; that the president of the company negotiated the transaction, and he testified, to use his own language, that "Mr. Washburn said after we had settled the differences and got through, before we executed the papers, that he didn't know much about the corporation, and as we owned all the stock, he required as a favor that we should—that I should—become personally responsible; I should guaranty the debt; he wanted I should guaranty it. He said it was all right' if I would guaranty that debt, and I said I agreed to that." The same witness testified that he requested the other defendants L. E. Dillman, Shreffler, and Kleinfelter to indorse the notes, and it was admitted that both notes were indorsed by the defendants, except the Lock-Stitch Fence Company, after the company had executed the notes and before their delivery to the payee.

*Hawley & Hanchett* and *Geo. C. Christian,* for plaintiffs.

*Geo. S. House* and *Geo. C. Fry,* for defendant.

DYER, J. Upon the argument it was contended in behalf of the defendants that the burden of proof to show that the defendant indorsers were co-promisors with the Lock-Stitch Fence Company upon the notes, and therefore jointly liable as makers, was upon the plaintiff; that the notes themselves were not evidence of such joint liability; that the liability of the defendant indorsers, if any, was that of guarantors, and that therefore they could not be sued with the maker of the notes as jointly liable thereon; that for these reasons the court should have instructed the jury, when requested so to do at the close of the plaintiff's case, to return a verdict for the defendants, except the Lock-Stitch Fence Company; and that in any event upon all the facts shown, considered in connection with the principles of law which it was claimed must control the disposition of the case, there should be a judgment in favor of the defendants L. E. Dillman, Shreffler, Kleinfelter, and A. Dillman.

Stating the grounds of the defendants' contention more in detail, it was urged that the effect of the plea of non-joinder, verified by affi-

davit under the statute which has been quoted, was to cast upon the plaintiff the burden of proving joint liability; and that under the decisions of the supreme court of Illinois, where a third party, not the payee, writes his name on the back of a note in blank, it is presumed in law—*First*, that the party wrote his name at or prior to the delivery of the note, and as a part of the transaction, to give the note credit with the payee; *second*, that such party thereby assumed the liability of a guarantor; that this presumption, however, may be overcome by parol evidence showing the actual contract of the parties as they intended it should be, so long as such contract is not inconsistent with that created by law. And it was then further insisted that the rule for determining the liability of the indorsers on the notes in suit must be that established by the law of Illinois where the notes were executed and were made payable. All this was controverted by counsel for the plaintiffs, who contended that the relation of the defendant indorsers to the note was such as to make them liable thereon as co-makers with the Lock-Stitch Fence Company; that the notes themselves were evidence of such liability; and that upon all the facts elicited, judgment should go in favor of the plaintiff against all the defendants.

Shortly stated, the controversy between the parties involves this question: What liability is assumed by a third party who places his name upon the back of a negotiable promissory note at the time of its execution by the maker, and before its delivery to the payee; and must liability in such case be determined in this court according to the course of judicial decision in the state where the obligation was incurred? Whether, in the case stated, the liability is that of original promisor, indorser, or guarantor, has been a question upon which great diversity of opinion has existed in many of the courts of the states. But the growing current of authority, even before *Good* v. *Martin*, 95 U. S. 90, seemed to tend towards the view that the liability assumed by a third party who thus indorsed a note in blank was that of original promisor, although a different rule was, and is yet, adhered to in some of the states. In New York it has been held, in a long line of cases, of which *Haviland* v. *Haviland*, 14 Hun, 627, *Phelps* v. *Vischer*, 50 N. Y. 69, and *Coulter* v. *Richmond*, 59 N. Y. 478, are examples, that presumptively such a party stands to the paper in the relation of indorser, but that this presumption may be rebutted by parol proof that the indorsement was made to give the maker credit with the payee. The same rule of liability prevails in Wisconsin. *Cady* v. *Shepard*, 12 Wis. 713. In Massachusetts it is held in a series of cases too extended for citation that if a third person place his name in blank on the back of a note before its delivery to the payee, he is an original promisor, and the presumption is, in the absence of anything to the contrary, that the names on the back and on the face of the note were written at the same time. To the same effect are 1 Pars. Cont. (6th Ed.) 243; *Irish* v. *Cutter*, 31 Me.

536; *Schneider* v. *Schiffman*, 20 Mo. 571; *Orrick* v. *Colston*, 7 Grat. 189; *Riggs* v. *Waldo*, 2 Cal. 485; *Sylvester* v. *Downer*, 20 Vt. 355; *Lewis* v. *Harvey*, 18 Mo. 74.

In this state it appears to be the established rule that a blank indorsement by a third party, made under the circumstances heretofore stated, is *prima facie* evidence of a liability in the capacity of a guarantor. In most of the cases wherein it has been so held, the holder sought to enforce against such third party the liability of guarantor, and the contention of the latter was that he could only be made liable as indorser. *Camden* v. *McKoy*, 3 Scam. 437; *Cushman* v. *Dement*, 3 Scam. 497; *Carroll* v. *Weld*, 13 Ill. 683; *Klein* v. *Currier*, 14 Ill. 237; *Webster* v. *Cobb*, 17 Ill. 459; *Heintz* v. *Cahn*, 29 Ill. 308; *Glickauf* v. *Kaufmann*, 73 Ill. 378; *Boynton* v. *Pierce*, 79 Ill. 145; *Stowell* v. *Raymond*, 83 Ill. 120; *Wallace* v. *Goold*, 91 Ill. 15.

But *Good* v. *Martin, supra*, must be regarded, I think, as settling the law upon this vexed question in the federal courts. In that case Good indorsed a note in blank after it was signed by the makers and before its delivery to the payee, and it was sought to hold him as a joint maker. In the opinion of the court, the authorities are reviewed, and it is distinctly held (1) that if a third person put his name in blank on the back of a note at the time it was made, and before it was indorsed by the payee, to give the maker credit with the payee, or if he participated in the consideration of the note, he must be considered as a joint maker; (2) but if his indorsement was subsequent to the making of the note, and to the delivery of the same to take effect, and he put his name there at the request of the maker pursuant to a contract of the maker with the payee for further indulgence or forbearance, he can only be held as guarantor; (3) if the note was intended for discount, and he put his name on the back of it with the understanding of all the parties that his indorsement would be inoperative until the instrument was indorsed by the payee, he would then be liable only as a second indorser, in the commercial sense. Says Mr. Justice CLIFFORD, speaking for the court:

"Where the indorsement is in blank, if made before the payee, the liability must be either as an original promisor or guarantor; and parol proof is admissible to show whether the indorsement was made before the indorsement of the payee, and before the instrument was delivered to take effect, or after the payee had become the holder of the same; and, if before, then the party so indorsing the note may be charged as an original promisor, but if after the payee became the holder, then such a party can only be held as guarantor, unless the terms of the indorsement show that he intended to be liable only as second indorser, in which event he is entitled to the privileges accorded to such an indorser by the commercial law."

Applying to the cases at bar the principles thus laid down, it cannot be doubted that *prima facie* the liability of the defendant indorsers on the notes in suit is that of original promisors; nor can it be successfully questioned, in the light of this adjudication, that the notes themselves, with the indorsements thereon, are evidence of such lia-

bility; for if the indorsements were made at the inception of the note, they are presumed to have been made for the same consideration and a part of the original contracts expressed by the notes. *Good* v. *Martin, supra.* Whether the liability of these parties on the notes is shown by the parol proof of the facts and circumstances which took place at the time of the transaction to be other than as above stated, will be considered in a subsequent part of this opinion.

But it was contended by counsel for the defendants that, as the notes in suit were executed and were made payable in this state, the law of the state, as established by the course of judicial decision here, must prevail in determining the character of the liability assumed by the defendant indorsers. This proposition was urged with much plausibility and force. That the question here involved is one of general commercial law must be admitted. The decisions in Illinois which have been cited are not founded upon any local statute, nor, in my opinion, upon any such local usage as is alluded to in *Swift* v. *Tyson*, 16 Pet. 1. Nor does the determination of liability in the cases at bar rest upon an interpretation of any statute or consideration of any local usage. It involves simply the legal relation which certain parties bear to instruments of a commercial nature, the true interpretation and effect whereof are to be sought, not in the decisions of the local tribunals, but in the general principles and doctrines of commercial jurisprudence. The case of *Swift* v. *Tyson, supra,* is so familiar that extended reference to it is unnecessary. It had been held for a series of years in New York, by the supreme court of that state, that a pre-existing debt was not a sufficient consideration to shut out the equities of the original parties in favor of the holders. But in *Swift* v. *Tyson,* which came up from New York, the supreme court of the United States held a contrary doctrine to that announced by the courts of the state upon the question of the right of a *bona fide* holder of a bill of exchange, who had taken it before maturity, in payment of a pre-existing debt, without notice of any equities between the original parties, to recover without regard to such equities.

In *Oates* v. *National Bank*, 100 U. S. 239, a commercial transaction was under consideration, which arose in Alabama. It was an action by a national bank, located in that state, against a citizen of the state, upon a promissory note there executed, and there made payable and negotiated. It was contended that the decision of the supreme court of Alabama should be accepted as the law governing the rights of the parties. But in reply to that contention, the supreme court of the United States said:

"While the federal courts must regard the laws of the several states, and their construction by the state courts, (except when the constitution, treaties, or statutes of the United States otherwise provide,) as rules of decision in trials at common law in the courts of the United States, in cases where applicable, they are not bound by the decisions of those courts upon questions of general commercial law. Such is the established doctrine of this court, so frequently announced that we need only refer to a few of the leading cases

bearing upon the subject. *Swift* v. *Tyson*, 16 Pet. 1; *Carpenter* v. *Providence Ins. Co.* Id. 495; *Watson* v. *Tarpley*, 18 How. 517."

Again, in *Railroad Co.* v. *National Bank*, 102 U. S. 14, the question was whether the holder of negotiable paper transferred *merely* as collateral security for an antecedent debt—nothing more—is not a holder for value, within the rules of commercial law which protect such paper against the equities of prior parties. Mr. Justice HARLAN, speaking for the court, in a very able opinion, admitted that if the principles announced in the highest court of the state of New York were to be applied to the case, a different conclusion would be reached than that announced in the opinion. The note in suit was executed and made payable in the state of New York, but the court reaffirmed the doctrine of *Swift* v. *Tyson* and *Oates* v. *National Bank*, and refused to follow the decisions of the state court. Upon the authority of these cases I must hold that, as the question in judgment is one of general commercial law, the decisions of the courts of the state upon it, though commanding, as they should, our attention and high respect, are not necessarily controlling here. Especially is this so if *Good* v. *Martin, supra*, is to be considered, as I think it must be, an exposition of the law upon the question of the character of the liability presumptively assumed by the defendant indorsers when they placed their names on the back of the notes in suit. This act of the parties occurred at the inception of the notes and before their delivery to the payee. Their indorsements, therefore, must be presumed to have been made for the same consideration as that expressed in the notes and as part of the original contracts.

As we have seen, an affirmative admission was entered on the record, before the plaintiffs rested their case, that the defendant indorsers indorsed the notes prior to their delivery to the payee. But without such admission, the notes themselves, with the indorsements thereon in the order in which they appear, in connection with the presumption arising therefrom, afforded *prima facie* evidence of liability as original promisors within the doctrine of *Good* v. *Martin*. This was proof that satisfied the requirement of section 36 of the practice act before quoted, wherein it imposed upon the plaintiffs—as in such cases undoubtedly it does, when a verified plea denying joint liability is filed—the burden of showing the joint liability of the defendants.

It remains only to consider whether the extrinsic oral testimony tending to show the circumstances under which the defendant indorsers placed their names on the notes over comesor changes the *prima facie* case made by the plaintiffs. In *Good* v. *Martin* it was held that the interpretation of the contract in such case ought to be such as carries into effect the true intention of the parties, which may be made out by parol proof of the facts and circumstances which took place at the time of the transaction. The language of the opinion makes it somewhat doubtful whether the court meant to go further than to hold that parol proof is admissible to show whether the

indorsement of the third party was made before the indorsement of the payee, and before the instrument was delivered to take effect, or after the payee had become the holder of the same. Little doubt, however, arises of the meaning and effect of the transaction between the parties in the cases in hand, even if the testimony, orally given, is all admissible. The defendant indorsers represented all the stockholders and officers of the company which executed the notes. The notes were given on account of a debt owing from the company to the payee. They were duly executed by the maker, and then, before delivery, indorsed by the other defendants. Credit was thereby given the maker with the payee, and such was the intention of the parties. The relations of the indorsers to the company made them, in a certain sense, participants in the consideration of the notes. The president of the company testified that Mr. Washburn said when the note was executed that, as he did not know much about the corporation, and as the parties who afterwards indorsed the notes owned all the stock, he desired them to become *personally responsible* on the notes. All this clearly adds to the *prima facie* case made by the notes themselves, cumulative and convincing proof of such a relation of the defendant indorsers to the notes as establishes their liability as co-promisors, within even a restricted view of *Good* v. *Martin*. But it is contended that an intention is evinced to create only the liability of guarantors by the further testimony of the president of the company that in the conversation with Washburn the word "guarantee" was used; that after he said that he required the defendant indorsers to become "personally responsible," he used the expression that the defendants "should guarantee the debt." The real relation of the parties in the transaction to the notes they indorsed, cannot be modified or changed by a form of technical expression that may have been used at the time, so as to affect the character of their liability. They indorsed the notes in blank. No words of express guaranty were employed to qualify the indorsements. It is apparent that the only object of the indorsements was to create an additional personal responsibility and secure credit to the maker with the payee, and the defendants must be held charged with the legal liability fairly flowing from their acts.

Judgment will be entered against all the defendants as jointly liable upon the notes in suit.