MARI A. CUMING, Appellant, *v.* GEORGE W. RODERICK, Respondent, Impleaded with ALEXANDER T. CARPENTER.

*Bills and notes — presumption that one who indorses a note in blank before delivery to the payee is a second indorser — such presumption may be rebutted by proof that the indorsement was made to obtain credit from the payee.*

Where a person indorses a promissory note in blank before delivery to the payee, the presumption is that he intends to become simply a second indorser; but this presumption may be overcome by parol proof showing that the indorsement was made in order that the maker of the note might obtain credit from its payee.

In an action brought to recover upon a promissory note made by the defendant Carpenter and indorsed by the defendant Roderick, it appeared that the defendants had been partners and had given a firm note to the plaintiff; that before the maturity of this note the copartnership was dissolved, and Carpenter assumed the indebtedness of the firm; that on the 26th day of September, 1892, Carpenter offered to the plaintiff his individual note in renewal of the firm note, but the plaintiff declined to take it unless it was indorsed by the defendant Roderick; that this was done, and that the plaintiff accepted the note as indorsed and surrendered the copartnership note.

On the trial the complaint was dismissed.

*Held,* that the circumstances above stated were sufficient to present a question for the jury to decide, whether Roderick did not intend to give his indorsement in order to enable credit to be obtained from the plaintiff, and whether the presumption that Roderick was to be liable only as a second indorser was not rebutted.

VAN BRUNT, P. J., and O'BRIEN, J., dissented.

APPEAL by the plaintiff, Mari A. Cuming, from a judgment of the Supreme Court in favor of the defendant George W. Roderick, entered in the office of the clerk of the county of New York on the 19th day of October, 1896, upon the dismissal of her complaint directed by the court after a trial at the New York Trial Term.

*Alfred B. Cruikshank,* for the appellant.

*James W. Glendinning,* for the respondent.

PATTERSON, J.:

This action was brought to recover the amount of a promissory note made by the defendant Carpenter and indorsed by the defendant Roderick. The case came to trial upon the complaint and answer

of the defendant Roderick. The complaint was dismissed on the ground of the failure of proof sufficient to charge the indorser with liability, and from that judgment this appeal is taken.

The facts, as they appeared on the trial, were that Carpenter and Roderick had been partners in business prior to the date of the note in suit; that they had made, during their copartnership, a note in their firm name, which was held by the plaintiff and which became due in September, 1892. Before the maturity of that note their copartnership was dissolved, and Mr. Carpenter assumed the indebtedness of the firm. On or about the twenty-sixth day of September Carpenter offered to the plaintiff his (Carpenter's) individual note in renewal of the copartnership note, which the plaintiff declined to take unless it were indorsed by the defendant Roderick. Carpenter thereupon procured the note, which was made payable to the plaintiff, to be indorsed by Roderick, and the plaintiff accepted it and surrendered the copartnership note.

The answer of the defendant Roderick admits that he indorsed the note for the accommodation of the defendant Carpenter, but alleges that his indorsement was without other consideration, and that the plaintiff knew that the indorsement was of the character stated. The defendant Roderick also admits in his answer that before maturity the note, with his indorsement on it, was delivered to the plaintiff for value. The complaint was dismissed on the ground that there was no evidence to show that Roderick made his indorsement of the note with the specific intention that it should be used by Carpenter to procure credit with the payee, and that, therefore, there was no proof that Roderick intended to be put in any other position than that of a second indorser of the paper. It is the recognized rule of law in this State that where a person indorses a promissory note in blank before delivery to the payee, there is a presumption that he intends to become simply a second indorser; but that presumption may be overcome by parol proof showing that the indorsement was actually made in order that the maker might obtain credit from the payee. (*Coulter* v. *Richmond,* 59 N. Y. 478.)

There was sufficient evidence in this case to go to the jury, establishing *prima facie* that Roderick did indorse this note to enable his former copartner, Carpenter, to get four months' credit on the obligation of the firm to Cuming, which obligation, as between Carpenter

and Roderick, the former had assumed. The answer admits the accommodation character of the indorsement, and, therefore, admits that it was to enable Carpenter to get credit with somebody. The answer also admits that Carpenter did get that credit from the plaintiff, and the only question, therefore, left open, would be as to whether, at the time the indorsement was made, Roderick knew that the credit was to be procured from the particular person named as the payee in the note. There would scarcely seem to be a question as to the fair inference to be drawn from all the facts as to that, for the indorsement being admittedly for the accommodation of Carpenter, it appeared upon the face of the note that Carpenter made the promise to pay to Cuming, who, to the knowledge of Roderick, held the firm note, for Roderick was present when that firm note was given originally to the plaintiff. In addition to that, Roderick was liable on the previous note held by Cuming, and in substitution for which the note in suit was given.

The proof shows that the plaintiff would not take Carpenter's individual note without the indorsement of Roderick, and that thereupon Carpenter went to Roderick, procured his indorsement, came back, delived the note thus indorsed to the plaintiff, and took up the firm obligation. These circumstances were sufficient to allow the inference that Roderick intended to give his indorsement to enable credit to be obtained from this plaintiff, and *prima facie* at least to rebut the presumption that Roderick was to be liable only as a second indorser.

The complaint was improperly dismissed in the court below, and the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

RUMSEY and INGRAHAM, JJ., concurred; VAN BRUNT, P. J., and O'BRIEN, J., dissented.

INGRAHAM, J. (concurring):

I concur with Mr. Justice PATTERSON that there should be a new trial. The fourth allegation of the complaint alleges that Carpenter "had procured the indorsement thereon ˙(*i. e.*, the note in suit) of the defendant George W. Roderick, who indorsed the said note for the purpose of giving credit to the maker with this plaintiff, the payee thereof, and the said note was delivered to the plaintiff so

indorsed." The only question is whether there was evidence to prove this allegation.

Before considering the testimony, it is well to notice the form of the denial of this allegation. The allegation was as to the purpose for which the defendant Roderick indorsed the note. It was an allegation of fact particularly within the knowledge of Roderick, and this allegation in the complaint called for an answer by him as to the intent with which he indorsed the note. I think there is considerable doubt as to whether this allegation is denied at all. Having thus alleged the purpose of the indorsement, Roderick, in answer to that allegation of the complaint, says: "He denies that the defendant Alexander T. Carpenter procured the indorsement of said note mentioned in the amended complaint by this defendant for the purpose of giving credit to the maker with the plaintiff, the payee thereof." It was not alleged that Carpenter had procured the indorsement for that purpose, and what Carpenter's purpose was is entirely immaterial. The allegation was that Roderick had indorsed it for that purpose, and that allegation he does not specifically deny. I also think it doubtful whether this allegation of the complaint is denied by the 7th paragraph of the answer, by which the defendant denies any knowledge or information sufficient to form a belief as to any of the allegations contained in said amended complaint not hereinbefore expressly admitted or denied.

If, however, the answer is sufficient to raise an issue as to the intent with which the defendant indorsed this note, I think that there was evidence sufficient to sustain a finding that Roderick indorsed this note for that purpose. The question is as to the purpose with which Roderick made the indorsement. To prove that purpose, it is not necessary that there should be evidence of an express agreement. The note as it stands with the indorsement upon it raises a presumption that the indorsement was intended to be subsequent to that of the payee. That presumption, however, is rebutted where it appears that the object of the indorsement was to give credit to the maker of the note with the payee. Where this intention appears — and it is plain, I think, that it can be found from the acts of the parties at the time, and the circumstances surrounding the indorsement of the note — then such an indorser becomes the first indorser and is responsible to the payee. The

question, therefore, is, did this defendant understand when he signed his name upon this note that the object was to give credit to the maker with the plaintiff? There is evidence that the plaintiff required the indorsement of the note by the defendant before he would give credit to the maker. Was there evidence from which the jury could find that the indorser understood this and made the indorsement for that purpose? We must look for the evidence of such an intention in the circumstances existing at the time the note was indorsed and the acts of the parties of which the defendant had knowledge. The evidence justified a finding of the jury that the following facts were known to the defendant: That the maker and indorser of the note had been in partnership, and that during the continuance of such partnership, and on May 5, 1894, a firm note had been given to the plaintiff which was delivered by or in the presence of the defendant Roderick; that after this note was due, the note in suit was presented to Roderick, which note was made by Carpenter, Roderick's former partner, payable to the order of the plaintiff, but was not indorsed by the plaintiff; that Roderick indorsed that note in blank and delivered it to Carpenter, and that at this time the firm had been dissolved; that Carpenter, the maker of the note, had taken the assets of the firm and had assumed the payment of its liabilities, Roderick thus standing in the relation of a surety for the payment of the debts of the firm. Roderick knowing these facts when he indorsed the note, there would be, I think, sufficient to justify an inference that the object of such indorsement was to give a credit to the maker of the note, so as to induce the plaintiff to accept it as an an extension of the time of payment of the debt then due from himself and Carpenter to the plaintiff. By such an indorsement, with such an intention, he simply continued the condition which had existed prior to that time. For what other purpose could he have indorsed the note? Certainly not for the plaintiff's accommodation, for the note had not been delivered to the plaintiff, but was in the hands of Carpenter, and was not indorsed by the plaintiff. Assuming that the indorsement could be said to be an accommodation indorsement, for whose accommodation was it made? For the maker, who has in his possession an undelivered note drawn to the order of a person holding a note upon which both the maker and indorser are liable, or for the payee of that note who had not

received it and had not indorsed it? It seems to me that, at least, there was a question for the jury to say for what purpose this defendant indorsed the note, and if it was for the purpose of giving credit to the drawer, so as to secure an extension of the time of payment of an indebtedness for which the indorser was liable to the plaintiff, then the defendant was liable. I agree, therefore, that there should be a new trial.

VAN BRUNT, P. J. (dissenting):

I cannot concur in the opinions of the court. It seems to me that the conclusions of the opinions depend upon the assumption of facts which do not appear in the record.

The note on which the action in this case was brought was one upon which the respondent appeared as an indorser subsequent to the indorsement of the plaintiff. The allegation in the complaint, and that which the plaintiff was required to prove in order to succeed in the action, was that the respondent indorsed the note for the purpose of giving credit to the maker with the plaintiff, the payee thereof, and that the said note was delivered to the plaintiff so indorsed, who parted with value therefor. The evidence in the case only showed that the defendants Carpenter and Roderick had been copartners; that, as such copartners, on or about the 5th of May, 1892, they had given a note in the course of their business to the plaintiff, payable probably in four months; and that Carpenter and Roderick had dissolved the firm, Carpenter assuming to pay its obligations. The note of the 5th of May, 1892, which Carpenter and Roderick had given to the plaintiff, was past due at the time of the giving of the note in suit, but there is not a scintilla of evidence tending to show that the respondent knew that fact. Carpenter brought the note in suit to Roderick and asked him to indorse it, but there is no evidence tending to show that Carpenter in any way informed Roderick of the purpose for which it was to be used. The note of May fifth, if payable in a given number of months after date, as commercial paper is usually made payable, had been due nearly three weeks at the time of the indorsement of the note in suit; and as there is no evidence that Roderick had any knowledge that it had not been honored at maturity, it must be assumed that Roderick believed it to be paid, as he had a right to do. Under these circumstances, it

seems to me there is not the slightest ground for the inference that Roderick knew that the note was to be used to take up an old note which was past due and which, for aught he knew, had been paid by Carpenter, as he was under obligation to do.

It is asserted in the prevailing opinions that it appeared upon the face of the note that Carpenter made the promise to pay Cuming, who, to the knowledge of Roderick, held the firm note, for Roderick was present when that firm note was given originally to the plaintiff. There is not the slightest evidence that Roderick had any idea that the previous note of the firm had been allowed to become due and to remain unpaid, or that Roderick knew that he was liable upon the previous note or that it was held by Cuming, as assumed in the prevailing opinions.

It is further assumed that the answer admits that the note sued upon was given in substitution for the previous note. It is difficult to see how such an assumption can be derived from the pleadings, inasmuch as the previous note is nowhere mentioned therein. But, even if this were the fact, it would not alter the position of the parties, because, unless the knowledge existed at the time the indorsement was made that this use was to be made of the note, and that it was for the purpose of obtaining credit with the payee thereof, notice that the indorsement had subsequently been used for the purpose of taking up a note not due, or past due, would not in any way affect the respondent's legal rights. There was an allegation in the complaint that this note had been delivered to the plaintiff for value. This allegation was admitted; and it could not be denied, even if such knowledge had come to the defendant subsequent to the making of the indorsement.

In the case of *Coulter* v. *Richmond* (59 N. Y. 481) the fact was recognized that knowledge of the purpose for which a note is intended to be used may be inferred from circumstances. The evidence in that case showed that for three years, respectively, prior to the making and delivery of the note sued upon, the maker had borrowed of the plaintiff the same bonds, giving each year as security for their return a note for $5,000, signed by the maker and the defendant, the latter being surety. Upon each delivery of a new note the prior note was taken up, and when the note in suit

was delivered the bonds were purchased, and the last note given for the loan of the bonds was taken up. The form of the paper which had been previously given indicated that it was intended to be used to obtain a credit with the payee. The obligation theretofore had been that of surety, and the form of the security in the last transaction was changed to that of indorser; the note ran for a year, as did the previous obligations upon which he had been surety; and that it was not an ordinary commercial transaction appeared, because the term of the note was longer than that of ordinary commercial paper. The note was made payable at the house of the payee, the place of payment indicating a purpose or expectation that the payee would hold it until it was due. The court held that from these facts, when this subsequent security was given in continuation of this business, although in a different form, the inference might be drawn that the indorser knew the purpose of the note; and that the place of payment was a circumstance inconsistent with the idea that the payee was to become a mere indorser — a condition of proof which is entirely different from that in the case at bar, the only evidence of any connection between the respondent and the plaintiff being that, some five months before, his firm had given a note which had become due and which he had the right to assume had been paid, there being not the slightest evidence in the case to show that the respondent had even a suspicion that it had not been paid.

In one of the opinions it seems to be assumed that, because Carpenter is dead and cannot testify as to what took place between himself and Roderick at the time he asked Roderick to indorse the note in question, assumptions may be indulged in against Roderick which could not have obtained had Carpenter been living and able to testify. It seems to me to be introducing a new rule of evidence to hold that because a witness has died who might have testified to a fact, therefore, that fact may be assumed.

The learned judge, in the opinion referred to, also raises a question regarding the sufficiency of the denial contained in the answer to set forth the issue which was investigated at the trial. It was assumed during the progress of the trial that the answer was sufficient. No point of its insufficiency was made either upon the oral argument of this appeal or in the points of counsel; and it would

seem to be rather late, upon the decision of an appeal, to question the sufficiency of pleadings which are conceded by the parties to be proper for the raising of the issue tried. Parties are bound by the practical construction which they put upon pleadings during the progress of a trial, in the same manner that parties are bound by the practical construction which they put upon contracts in the execution thereof; and forced interpretations of pleadings will certainly not be indulged in for the purpose of reversing a judgment, the result of a trial, in which, by the concessions of the parties, the pleadings have been deemed sufficient.

The judgment appealed from should be affirmed, with costs.

O'BRIEN, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.