<hr />

### ROESSLE v. LANCASTER.

(Supreme Court, Appellate Division, First Department. January 8, 1909.)

1. BILLS AND NOTES (§ 243*)—INDORSEMENT BEFORE DELIVERY—NATURE OF LIABILITY.

Negotiable Instrument Law (Laws 1897, p. 734, c. 612) § 113, provides that a person placing his signature on an instrument otherwise than as maker is deemed to be an indorser, unless he clearly indicates an intention to be bound in some other capacity. Section 114 provides that, where a person not a party to an instrument places his signature thereon before delivery, he is liable as indorser where the instrument is payable to the order of a third person. The lessor of a hotel, on default of the lessee, made a lease of the hotel to K. on condition that L. would stand as guarantor of the performance of the lease. It was also agreed·that the lessor should purchase the furniture owned by the former lessee and transfer the same to K. at a stated consideration. As a part of the price of the furniture, K. executed a note, containing the blank indorsement of L., and such note was accepted by the former lessee as a part of the purchase price of the furniture. Held, that L. was liable as an indorser of the note, and not as a principal obligor.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 549, 550; Dec. Dig. § 243.*]

2. BILLS AND NOTES (§ 514*)—ACTION—ISSUES, PROOF AND VARIANCE.

Where, in an action on a note by an indorser thereof, the complaint bases defendant's liability on his act in indorsing the note before delivery, and does not allege that defendant signed the note as a maker or principal, evidence of transactions between the principal maker and the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

payee of the note, and which formed the consideration of the note, was not admissible.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1783; Dec. Dig. § 514.*]

3. BILLS AND NOTES (§ 452*)—FRAUDULENT REPRESENTATIONS—DEFENSE BY INDORSER.

Where a note given for the purchase price of the furniture in a hotel was indorsed by defendant before its delivery to the seller of the furniture, and such indorsement was made on the fraudulent representation of the seller as to the earning capacity of the hotel, defendant was entitled to interpose such fraud as a defense to the note without offering to rescind the contract of sale or to restore the furniture to the seller.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1365, 1366; Dec. Dig. § 452.*]

4. BILLS AND NOTES (§ 453*)—INDORSEMENT BEFORE DELIVERY—FRAUD.

Where the seller of the furniture of a hotel refused to complete the contract of sale unless the buyer procured an indorser to a note given for a part of the purchase price, such indorser could interpose the defense, in an action on the note, that the indorsement was procured by the fraudulent representations of the seller as to the earning capacity of the hotel.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1349; Dec. Dig. § 453.*]

5. BILLS AND NOTES (§ 537*)—ACTION AGAINST INDORSER—FRAUD—QUESTION FOR JURY.

In an action against the indorser of a note, evidence held sufficient to present a question for the jury as to whether the indorsement was procured by fraudulent representations.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 1880; Dec. Dig. § 537.*]

Appeal from Trial Term, New York County.

Action by Ellwood O. Roessle against Frederick J. Lancaster. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed and remanded.

See, also, 119 App. Div. 368, 104 N. Y. Supp. 217.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

Charles F. Brown, for appellant.
William R. Wilder, for respondent.

INGRAHAM, J. Upon the first trial of this action the court directed a verdict for the plaintiff upon the pleadings and the defendant's opening. The judgment entered thereon was reversed. 119 App. Div. 368, 104 N. Y. Supp. 217. The nature of the action is stated in the opinion on that appeal, and it is not necessary to restate it here. We there held that, as the defendant was sued as an indorser upon a promissory note, the defendant's contract with the plaintiff was in effect that of a surety for the maker of the note, which was quite distinct from the contract of the maker, and that in an action against the surety upon his contract of suretyship it was a complete defense to show that he was induced to enter into the contract by false representations made by the plaintiff in the action to enforce the obligation. Upon the retrial the court held as a matter of law that the

defendant was liable as a principal on the note, and, therefore, he was bound to return the property which he, as principal, had received, for the purchase of which the note was delivered, before he could defend an action upon the ground that the indorsement was obtained by fraud.   It appeared that the plaintiff had been the lessee of a hotel known as the "Gilsey House" for some time prior to March 1, 1904, at which time the rent was $69,000 a year.   He was in arrears for rent and taxes about $30,000, and the business had not been profitable. About January 4th he notified the landlord that he could not pay the rent and taxes then due.   The landlord had been looking about for a new tenant for the property.   One Albert R. Keen, who appears to have had a business connection with a corporation in which the defendant was interested, commenced negotiations with the landlord for a lease of the hotel.

On the 31st of December, 1903, an agreement was executed between the heirs of Peter Gilsey, the landlord, and said Keen, by which the heirs of Gilsey agreed to lease the premises known as the "Gilsey House" to A. R. Keen, and Keen agreed to hire the same from such date as the present lessee (the plaintiff) should cancel his lease and deliver possession of the premises to the Gilsey heirs to the 1st day of May, 1911, at the rent of $75,000 per annum, and Keen agreed to deposit $75,000 as security for the fulfillment of the covenants and conditions of the said lease.   This agreement was based upon the Gilsey heirs being able to obtain a cancellation of the lease to the plaintiff, and also upon Keen being enabled to purchase all the furniture and equipment then in the Gilsey House, and belonging to the plaintiff, for the sum of $50,000.   At that time the defendant had no other business relations with Keen, except that Keen was to manage a hotel that belonged to a corporation in which the defendant was interested.   When this agreement was offered in evidence by the plaintiff it was objected to as immaterial, incompetent, and irrelevant, which objection was overruled, and the defendant excepted.   After Keen had received this instrument from the Gilsey heirs, he had an interview with the defendant, and subsequently the defendant had various interviews with the Gilsey heirs.   The defendant then had an interview with the plaintiff on the 10th of January, and on the 20th of January he wrote a letter to the representative of the Gilsey heirs which was offered in evidence by the plaintiff, objected to as irrelevant, immaterial, and incompetent, and as having nothing to do with the issues in this case, which objection was overruled, and the defendant excepted.   In that letter the defendant stated that he had given the matter careful consideration, but was disinclined to become interested unless he could see that Keen could successfully work out his plan in the management of the plant, which the defendant feared he could not do, as he at the outset was going heavily in debt, but he would be inclined to take up the matter if the Gilseys would accept a proposition to lease the hotel at a rental of $75,000 per year, and provided the Gilseys could arrange to purchase the furniture from the present owners and sell it to Keen at the price they paid for it, Keen to pay it off in installments;  that if the Gilseys would not entertain that proposi-

tion defendant would withdraw from the matter and leave it to Keen to do as he thinks best.

The plaintiff then offered in evidence a communication to the Gilsey heirs dated January 23, 1904, by which Keen proposed to take a lease of the Gilsey House upon certain terms therein stated, upon which there was an indorsement signed by the defendant stating that if Keen's proposition was accepted he would endeavor to carry it through before February 1st. This proposition does not seem to have been accepted, and on January 25th the Gilsey heirs made a proposition to Keen which contained no reference to the defendant. The plaintiff then offered in evidence another proposition signed by the defendant and Keen, which was submitted about February 1st, which proposed that there should be a corporation organized which was to acquire the lease of what was known as the "Edgemere Hotel"; that the Gilsey estate was then to lease the Gilsey House to Keen on the terms before agreed to, who was then to assign the Gilsey House lease to the new corporation; and Keen and the defendant were to agree to deposit with the trustee $100,000 in stock of the new corporation to secure the payment of the rent of the Gilsey House, and the defendant agreed to furnish a collateral bond to further secure the payment of such rent in the sum of $37,500. This was objected to by the defendant upon the same grounds as the former instruments as being incompetent, irrelevant, and immaterial, and as having nothing to do with this case; that objection was overruled, and the defendant excepted. Nothing seems to have come of this proposition, but on February 20, 1904, Keen submitted another proposition to the Gilsey heirs, which was for a lease of the Gilsey House for seven years and two months at a rental of $75,000 per annum, Keen to purchase from the Gilsey heirs the furniture now contained in the hotel for the sum of $50,000, payable one-half in cash and the balance in Keen's promissory notes; and Keen agreed to procure a bond for the sum of $37,500 to be executed by the defendant to secure the payment of the rent and of the notes given for the furniture, title to the furniture to remain in the Gilsey estate until fully paid for in cash. Indorsed on that proposal was a statement, signed by the defendant, that if the proposition was accepted he would agree to carry it out before March 1, 1904; and it was this proposal which was finally accepted by the Gilseys. A corporation known as the "Seaboard Hotel Company" was organized two or three days before the 1st of March. One hundred thousand dollars of the stock of this corporation was issued to Keen, of which half was transferred by Keen to the defendant, who thereupon transferred it to the Gilsey heirs as security for the obligations of Keen under this agreement to the Gilsey heirs. This testimony was also objected to by the defendant on the same grounds; the objection was overruled, and the defendant excepted. And it was this transaction upon which the court held as matter of law that the defendant was liable upon this note as principal, and not as indorser.

The complaint alleges that the defendant Keen had made his promissory note in writing, of which a copy is set forth, and delivered the same to the plaintiff for value, and that, before such note was delivered

to the payee, the plaintiff, the defendant Lancaster, indorsed the same for value. When the note became due it was presented for payment, payment demanded and refused, it was protested for nonpayment, and notice of protest was given to Keen, the maker of the note, and defendant Lancaster, the indorser thereon. There is no allegation in the complaint that this defendant was a principal, the only allegation being that he was an indorser.

Prior to the negotiable instrument law (chapter 612, p. 719, of the Laws of 1897) the defendant, upon this complaint, would not have been liable to the payee of the note as an indorser (Coulter v. Richmond, 59 N. Y. 478), but section 113 of the negotiable instrument law provides that:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an endorser unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

And section 114 provides that:

"Where a person not otherwise a party to an instrument places thereon his signature in blank before delivery he is liable as endorser in accordance with the following rules:  First, If the instrument is payable to the order of a third person he is liable to the payee and to all subsequent parties."

Thus, under this provision, Lancaster became liable to the plaintiff, the payee of the note, as an indorser, there being no indication of an intention to be bound in any other capacity. This defendant was thus treated as an indorser by the plaintiff, and the action was brought against him based upon that relation to the note. The suit was on the note. Neither the defendant nor Keen had any direct relations with the plaintiff except that based upon the obligations evidenced by this note, and but for this note there was no obligation of either Keen or the defendant to the plaintiff. The note seems to have been given because of the fact that by the arrangement between Keen and the Gilseys, Keen was to pay to the Gilseys $25,000 in cash on account of the furniture which the Gilseys had agreed to sell to Keen. Keen had requested the Gilseys to accept $20,000 in cash and a $5,000 Keen note, which the Gilseys had agreed to accept on condition that the plaintiff would accept the note on account of the cash that the Gilseys were to pay to the plaintiff for the furniture. The defendant applied to the plaintiff to accept Keen's note, and he refused unless the defendant would indorse the note, which the defendant finally agreed to do, and thus Keen's note for $5,000, the note in suit, indorsed by the defendant, was delivered by Keen to the Gilseys as a part payment on account of such furniture, and was accepted by the plaintiff from the Gilseys as so much cash in the transaction between them. Assuming that the defendant could be held as between the Gilsey heirs and Keen as a principal in relation to the transactions between them, upon this evidence it is impossible for me to see how the plaintiff could hold the defendant as a principal in relation to this note. The plaintiff agreed to accept the note on condition that it was indorsed, and it was so indorsed, but not as part of any arrangement between Keen and this defendant with the plaintiff by which either Keen or the defendant was to receive a title to the furniture or any interest therein from the plaintiff.

I cannot see that this arrangement between Keen and the defendant and the Gilseys had any more to do with this note than if the plaintiff had been a third party purchasing a note made by Keen and indorsed to the defendant. Neither Keen nor the defendant were under any obligation to pay the plaintiff anything, but the plaintiff, however, agreed to accept this note of Keen's indorsed by the defendant in lieu of a payment of $5,000 which the Gilsey heirs had agreed to pay to the plaintiff. It seems to me obvious that the only claim that the plaintiff could possibly have against either Keen or the defendant was based upon the note, which upon its face was Keen's promise to pay, indorsed by the defendant. The only liability there was or could be as between the plaintiff and the defendant was that of an indorser upon Keen's obligation. But assuming that the plaintiff had sought to hold Keen as a principal instead of an indorser, it is quite necessary, it seems to me, that there should have been appropriate allegations in the complaint basing defendant's liability upon such an obligation, and that an action based solely upon defendant's liability as indorser could not upon the objection of the defendant be turned into an action to hold such an indorser as a maker or principal in the transaction out of which the obligation arose. And thus all this testimony expressly objected to as having nothing to do with the issues presented in this action was erroneously admitted in evidence, when no such issues were presented by the pleadings.

But assuming that the action was properly brought, I do not think that upon this evidence the defendant Lancaster could be held as a principal in relation to the transaction as between Keen and the Gilseys. The proposition that was finally accepted was that the Gilseys should execute a lease of the hotel to Keen, which lease Keen was to transfer to a corporation to be incorporated, and a certain percentage of the capital stock of that corporation transferred to the Gilseys as security that Keen would perform his obligations under the lease and agreements, and Keen was to give as additional security a bond of the defendant in the penalty of $37,500. It was thus Keen and the corporation who were to be the lessees, and it was Keen's note for $25,000 that was to be accepted by the Gilseys as part payment for the furniture the Gilseys were to purchase from the plaintiff and transfer to Keen. There was annexed to this proposal an agreement by Lancaster to carry it out on or before March 1, 1904. In the proposition Keen undertook to procure this bond of $37,500 from Lancaster, and Lancaster's agreement to carry out the agreement, I think, clearly referred to his undertaking to give the bond which Keen had agreed to procure from him. But assuming that Lancaster had assumed an absolute obligation to the Gilseys that this proposal, if accepted, should be carried out by Keen, the evidence is undisputed that it was carried out by Keen; that Lancaster gave the bond; and that Keen gave the notes he was to give, and executed the lease that it was provided in the agreement should be executed by the Gilsey heirs to Keen. A corporation was organized, the Gilsey House lease was transferred to it, and the stock of the corporation was transferred to the Gilseys as security for Keen's obligations under the lease. Lancaster's agreement, therefore, was strictly complied with. There was no agreement or proposal that Lan-

caster should be liable either upon the lease or upon the Keen notes, and Lancaster's only interest in the whole transaction, so far as appears anywhere in this record, was the fact that he was the owner of a considerable portion of the stock of the corporation to which the Gilsey House lease was transferred and who undertook to operate the hotel. The corporation was organized before the lease was executed, in accordance with the agreement between Keen and the Gilsey heirs. Just what was contemplated by the accepted proposition was accomplished, and it seems to me clear that the defendant would not have been responsible either to the Gilsey heirs for the rent reserved by the lease, or for the notes that Keen had given to the Gilseys to be applied on the $50,000—the consideration for the transfer of the furniture from the Gilseys to Keen. I think, therefore, the court was clearly in error in holding that Lancaster could be held as a principal in the transaction, or that he was liable to the plaintiff in any way except as an indorser on the note given by Keen under his contract to purchase this furniture from the Gilseys. If this is so, it is quite evident that the defendant was under no obligation to rescind the contract and restore the furniture that the Gilseys had sold to Keen or the corporation as a condition of setting up a defense that his indorsement upon the note had been procured by false and fraudulent representations made to him by the plaintiff. It is quite evident that Keen's ability to pay this note would depend upon his successful conduct of the hotel business at the Gilsey House. It was understood by all the parties that Keen was substantially without means. The Gilseys had required the defendant to give a bond for $37,500 to secure the rent and the notes that Keen had given them on account of the purchase of this furniture, and when Keen made an application to the Gilseys, and subsequently to the plaintiff, to accept this $5,000 note in lieu of so much cash that he had agreed to pay upon the execution of the lease for the furniture, the plaintiff refused to accept the note unless the defendant indorsed it. If Keen was unsuccessful in the hotel business that he contemplated conducting at the Gilsey House, it is quite evident that the defendant would have to pay this note, and it was of the utmost importance, therefore, for him to be assured that the hotel business there conducted was a profitable one, so that Keen would be able to meet the note when due. The plaintiff had been conducting this hotel for years, and was necessarily acquainted with the nature of the business and its character, and whether or not it was a profitable business; and if he, by making distinct representations as to the character of the business and as to whether or not it was profitable, induced the defendant to indorse Keen's note for this amount, which Keen could only pay out of the profits of the business, and such representations were false and fraudulent, and known by the plaintiff to be so when made, and were believed and relied upon by Lancaster in making the indorsement, it necessarily follows that the plaintiff could not enforce the liability created by the indorsement as against the indorser, whose indorsement had been thus procured by the plaintiff's fraud.

Lancaster was called as a witness, and testified that he had several conversations with the plaintiff in January, 1904. That at the first conversation, had about January 10th, the defendant told the plaintiff

that he called on the plaintiff in behalf of Mr. Keen, who had been talking with the Gilsey people about taking up a lease of the Gilsey House for the unexpired term of his lease. That the defendant had called upon the plaintiff to ascertain why he wanted to give the property up, and also to make some inquiry regarding the business. That the plaintiff said:

"The only reason that I would give the house up is that I have an opportunity to join my father in the management of the Arlington Hotel at Washington, and I am considering whether it is better for me to go there and give this up or to remain there, and I haven't fully determined."

That defendant then said he would like to make some inquiries about the plaintiff's business, and asked to see the plaintiff's books, to which the plaintiff replied that if he concluded to give it up, and Keen succeeded in making arrangements with the Gilseys, he would give the defendant a written statement of his books. Defendant then asked the plaintiff if his business had been prosperous, and defendant said, "Oh, yes." That defendant asked if he had made money there, to which plaintiff said:

"Yes; that he took the hotel May 1, 1900, and at that time they were making some alterations to the house which caused him to run behind that first season, and that he had been obliged to borrow some money from his father, but from that time on the business had been good, so that he had repaid his father and had paid some $80,000 for furnishing the house."

That defendant then asked plaintiff if that had been made out of the business, to which plaintiff said "Yes," referring the defendant to various business houses with which he had transactions. The plaintiff made further statements in relation to the room rents and his restaurant receipts and other receipts of the hotel, and stated that the average total receipts were about $300,000 a year. Plaintiff then made statements as to his expenses, and that these receipts and expenses were the average per year during the time that the plaintiff had been there. From these statements it was apparent that the hotel business was quite profitable, and these statements were referred to when plaintiff asked defendant to indorse the note in suit. There was evidence then offered tending to show that if these statements were made they were untrue; that the business had been run at a considerable loss, so that the Gilseys had reduced the rent from $75,000 to $69,000 a year; that the business at the hotel could not be made to pay at a rental of $69,000 a year; and that the statements in regard to the receipts and disbursements of the hotel were false.

Upon the former appeal (119 App. Div. 368, 104 N. Y. Supp. 217) we held that the defendant's obligation as indorser upon this note could not be enforced if it was induced by false and fraudulent representations made by the plaintiff, the payee of the note; that under such circumstances the defendant was not bound to restore the property purchased by the maker of the note; and that the answer set up a good defense.

At the end of the case, when counsel for the defendant asked to go to the jury as to whether or not the representations were made and whether or not they were untrue, the court said: "I assume that they were made, and I assume that they were false." Counsel for the

defendant then said: "I want to go to the jury, then, on the question of the relation between these parties;" to which the court replied: "There is nothing to go to them on that question." The defendant excepted to the refusal to submit these questions to the jury, and the court then directed a verdict for the plaintiff for the full amount claimed, to which the defendant excepted. I think it clear that there was evidence to go to the jury as to whether or not the plaintiff did induce the defendant to indorse this note by false and fraudulent representations, and that the court was therefore wrong in directing a verdict for the plaintiff.

The judgment and order appealed from should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN, J., concurs.

PATTERSON, P. J., and CLARKE and HOUGHTON, JJ. We think there was a question to go to the jury, and therefore concur in the result.