CHARLES W. WILSON, PLAINTIFF IN ERROR, v. HARRY C. HENDEE, DEFENDANT IN ERROR.

Submitted December 10, 1906—Decided March 4, 1907.

1. Section 63 of the Negotiable Instruments act (*Pamph. L.* 1902, *p.* 594) abrogates the rule declared in *Chaddock* v. *Vanness*, 6 *Vroom* 517, that the signature of a third party upon the back of a negotiable instrument prior to its delivery to the payee creates *per se* no implied or commercial contract whatever.
2. Section 64 of the Negotiable Instruments act (*Pamph. L.* 1902, *p.* 694) deals only with the liability of an irregular endorser to the payee and subsequent parties, and does not define the rights and liabilities of several such endorsers as between themselves.
3. Under section 68 of the Negotiable Instruments act (*Pamph. L.* 1902, *p.* 596) parol evidence is admissible as between several endorsers to show that they agreed to become liable otherwise than in the order in which they endorsed.
4. The first of two accommodation endorsers of a promissory note having endorsed upon the strength of a verbal agreement made by the second endorser, whereby the latter, in consideration that

the maker of the note should place in his hands certain valuable personal property to secure payment of the note by the maker, promised the first endorser to indemnify him against loss thereon, and the maker having furnished the consideration before delivery of the note, and the first endorser having been obliged to pay the note to the holder—*Held,* in an action by the first endorser against the second endorser for reimbursement under the agreement of indemnity, that this was not a promise to answer for the ·debt, default or miscarriage of another person within. the meaning of the statute of frauds (*Gen. Stat.,* p. 1603, § 5, ¶ 2), but an original obligation, founded upon a consideration of substantial benefit to the promisor.

5. *Apgar's Administrators* v. *Hiler,* 4 *Zab.* 812, followed; *Hartley* v. *Sandford,* 37 *Vroom* 627, distinguished.

On error to the Supreme Court.

For the plaintiff in error, *Henry S. Alvord* and *J. Boyd Avis.*

For the defendant in error, *Henry C. Bartlett* and *Royal P. Tuller.*

The opinion of the court was delivered by

PITNEY, J.   On May 12th, 1904, one Walter D. Wilson made his promissory note for $920, payable to the order of the Vineland National Bank.   Prior to its delivery to the payee the note was endorsed successively by Charles W. Wilson, the plaintiff herein, and by the defendant, Hendee, for the accommodation of the maker.   The paper having gone to protest at maturity, the plaintiff was obliged to pay, and did pay, the whole amount of it to the bank.

The present action is based upon an alleged agreement made between Hendee and the plaintiff prior to the endorsement of the note by either of them, to the effect that if plaintiff would become endorser, Hendee would likewise endorse, and would pay the note at maturity, and indemnify the plaintiff and save him harmless against all loss by reason of his endorsement, in consideration of certain valuable personal property to be placed in his hands by the maker.

At the trial plaintiff introduced evidence tending to show

the making of such an agreement, and that on the strength of it the note was endorsed by the plaintiff; that before its delivery to the bank the maker gave to Hendee a bill of sale for certain personal property of the estimated value of $1,000 as a mortgage to secure its payment, and that Hendee at once took possession of this personal property, and afterwards disposed of some or all of it.

The learned trial justice granted a nonsuit upon the authority of the decision of this court in *Hartley* v. *Sandford*, 37 *Vroom* 627, on the ground that Hendee's promise to the plaintiff to indemnify him was within the statute of frauds, as being a promise to answer for the debt, default or miscarriage of another person, and therefore was unenforceable because not made in writing.

It is contended by counsel for the plaintiff in error that the case is not controlled by Hartley *v.* Sandford, but is rather within the principle of the earlier decision of this court in *Apgar* v. *Hiler,* 4 *Zab.* 812.

In order to determine the controversy, it is important to consider precisely what was decided in these two cases, and also to note certain changes made in the law of negotiable instruments by *Pamph. L.* 1902, *p.* 583, which enactment antedated the making of the note in question.

In the case in 4 *Zab.* there was a joint and several promissory note, payable to the order of one Melick, and signed by one Fisher, by Apgar and by Hiler as makers. Opposite to the names of Apgar and Hiler the word "sureties" was written by Apgar. Apgar solicited and procured Hiler to sign the note as surety, saying, "If you will sign it, it will be a great accommodation to us, and you shall never pay one red cent." Apgar and Fisher were partners in business. Hiler, having been obliged to pay the note, sued the administrators of Apgar in the Supreme Court to recover the amount thus paid, and obtained a judgment against them, which, upon writ of error, was sustained by this court. Chief Justice Green, in his opinion, said that upon the face of the note, and in the absence of extrinsic evidence, Apgar and Hiler would be regarded as co-sureties, but that it was competent for the

plaintiff to show in what relation the several signers stood to each other; that their relation to each other depended not upon the form of the note, nor upon whether their names were signed first or last, but upon the character in which they became parties and the agreement or contract made among themselves at the time of signing. "This," he said, "was matter *in pais,* proper to be proved by parol, and though the memorandum imports *prima facie* that Apgar and Hiler were joint securities, it was competent for the plaintiff to show whether they were securities for Fisher alone or for each other also" (citing cases). And again: "If the evidence was believed, it showed either that Fisher and Apgar were the principal debtors and Hiler alone the security, or, if Apgar was security for Fisher, still that Hiler signed, not as joint security with Apgar and liable with him to contribution, but as security for Apgar also. He stands to Hiler in the relation of principal to surety. It is clear from the evidence that in any event Apgar was to stand between Hiler and loss. If the jury believed that the note was the debt of Fisher and Apgar, and that Hiler alone was security, he is entitled to recover from his principals the amount paid for their benefit. * * * If, on the other hand, the jury believed that Fisher alone was the original debtor and Apgar his surety, but that Hiler became surety at Apgar's request, and upon his promise of indemnity, still the plaintiff was entitled to recover in this action. The evidence was not offered to show an independent contract of guaranty against loss, but simply the character in which Hiler became a party to the note. This, as has been shown, may be proved by parol. Nor was the evidence offered to prove a promise by Apgar to pay the debt of a third person, and which must therefore be in writing. It was designed to show an original equitable obligation on the part of Apgar to refund the money, growing out of the circumstances under which Hiler became a party to the instrument, and consequently liable to pay the debt."

It will be observed that in this reasoning the court dealt with two legal rules that had been suggested as obstacles to the plaintiff's recovery. The one was the common-law rule

that rejects parol evidence of an antecedent or contemporaneous understanding that tends to modify the effect of a written instrument. The effect of this rule was excluded on the ground that the memorandum appearing upon the face of the note did not clearly show the relation of the one surety to the other. The other obstacle suggested was the statutory rule found in that section of the statute of frauds (now in *Gen. Stat.*, p. 1903, § 5, ¶ 2) which declares that no action shall be brought to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person unless the agreement shall be in writing, &c. This the court disposed of upon the ground that the parol evidence was not offered to prove Apgar's promise to pay the debt of a third person, but to show his original equitable obligation to indemnify Hiler.

Before coming to *Hartley* v. *Sandford*, 37 *Vroom* 627 (which deals only with the statute of frauds), it will be well to consider whether either the common-law rule or the Negotiable Instruments act (*Pamph. L.* 1902, p. 583) excludes the parol evidence upon which alone was rested the proof of the agreement for whose breach recovery was sought in the present case.

The note in question was made by Walter D. Wilson to the order of the bank, and was endorsed by the parties to this suit prior to its delivery to the bank. As the law stood in this state before the enactment referred to, their signatures would *per se* have created no implied or commercial contract whatever. Their liability to the payee would have depended upon extrinsic evidence to show the intent with which they became parties, and parol evidence would have been competent for the purpose of showing such intent. *Chaddock* v. *Vanness*, 6 *Vroom* 517. Had the payee afterwards endorsed the note, and had it come to the hands of a *bona fide* holder before maturity, the irregular endorsers might have been subjected to the liability of second endorsers. *Crozer* v. *Chambers*, *Spenc.* 256. But as between the original parties, the question whether any contract was made, and if so, what was the character of that contract, was to be determined by the intention

of the parties as ascertained by parol evidence of the circumstances under which the endorsement was made, evidence of this sort not being objectionable on account of a tendency to vary a written contract, when no contract would arise except for such evidence. *Chaddock* v. *Vanness,* 6 *Vroom* 523.

Even with respect to negotiable paper regular in form, our decisions recognized the admissibility of parol evidence, as between the immediate parties, for the purpose of showing that a note or endorsement was made for accommodation, or made without consideration, or upon a consideration that was conditional and was not performed. *Gilbert* v. *Duncan,* 5 *Dutcher* 133, 521; *Chaddock* v. *Vanness,* 6 *Vroom* 520.

But as a general rule, with respect to paper regular in form, our decisions did not, even as between parties, admit of the introduction of parol evidence to vary the commercial contract that was held to arise from the terms of the instrument—for instance, as between successive accommodation endorsers. *Johnson* v. *Ramsey,* 14 *Vroom* 279; *Middleton* v. *Griffith,* 28 *Id.* 442, 448; *Kling* v. *Kehoe,* 29 *Id.* 529; *Foley* v. *Emerald Brewing Co.,* 32 *Id.* 428, 431.

In other jurisdictions the rule adopted in this state with respect to excluding parol evidence of the intent of the parties to a negotiable instrument regular on its face, where such evidence would tend to vary the contract that the law merchant implies from the form of the instrument, was not uniformly adhered to, it being held in many states that in actions between the parties parol evidence was admissible to show that they had agreed otherwise than as would appear from the face of the note. 1 *Dan. Neg. Inst.* (*5th ed.*), § 717, and cases cited; 2 *Rand. Com. Pap.,* §§ 740, 741, 778, 779, and cases cited; *Crawf. Ann. Neg. Inst. L.* (*2d ed.*), § 118.

In this state of the law our new Negotiable Instruments act was passed. *Pamph. L.* 1902, *p.* 583. Prior to its enactment a similar act, or one substantially similar, had been adopted in sixteen American states, and had been enacted by Congress as the law of the District of Columbia. *Crawf. Ann. Neg. Inst. L.* (*Preface to 2d ed.*). We must attribute to our

legislature an intent to render the law of this state respecting negotiable instruments conformable to the law in these other states. And at the same time it is obvious that the act was intended to do away with some of the distinctions established or recognized by our adjudicated cases respecting the form and mode in which a contract of endorsement might be entered into, and the effect of making such an endorsement, whether as between the parties or with respect to subsequent holders of negotiable paper. By section 63 of that act (*Pamph. L.* 1902, *p.* 594), "a person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." This, of course, abrogates so much of *Chaddock* v. *Vanness,* 6 *Vroom* 517, as held that an irregular endorsement of itself imported no implied or commercial contract whatever.

Section 64 is as follows: "Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as endorser, in accordance with the following rules: I. If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties. II. If the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer. III. If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee."

It will be observed that this section deals with the rights of the payee and subsequent parties, and has not the effect of defining the rights and liabilities of several irregular endorsers as between themselves. These are set forth in section 68, which reads as follows:

"As respects one another, endorsers are liable *prima facie* in the order in which they endorse, but evidence is admissible to show that as between or among themselves they have agreed otherwise," &c.

This does not, by express mention, sanction parol evidence. Neither does it expressly exclude any kind of evidence,

whether written or verbal. Is parol evidence excluded by implication? If the legislative design was to admit only written evidence for the purpose indicated, it would have been unnecessary to say anything upon the subject, for by the common-law rules of evidence, other writings explanatory of the real agreement would, of course, have been admissible. When we recall that a previous section had brought irregular and regular endorsers into a single category in the absence of an expressed intention to the contrary; that the first clause of section 68 renders the mere act of endorsement only *prima facie* evidence of the contract as between successive endorsers, and that by previous decisions parol evidence as between irregular endorsers was for all purposes admissible, and as between regular endorsers was for some purposes admissible and for other purposes not, it is easy to arrive at the conclusion that the section was intended to admit parol evidence in all cases between endorsers for the purpose of showing what was the agreement amongst themselves. This view brings our state into accord with the rule already laid down in some other jurisdictions as the common-law rule. At the same time it does not destroy the value of the instrument as a commercial instrument, for it is not against those who subsequently take the instrument in the course of commerce that the explanatory evidence is admitted. When we remember that the rules of the law merchant in this regard were established especially for the protection of subsequent holders of the instrument, and that the liability of endorser arises not from any words expressed upon the paper, but from implications that originated in the necessities of trade and commerce, it is reasonable to attribute to the legislature an intent to leave the paper open to explanation by parol as between the endorsers themselves.

This is the effect that was given to section 68 of the act in the recent decision of this court in the case of *Morgan* v. *Thompson,* 43 *Vroom* 244.

In our opinion, therefore, the act admits of the introduction of parol evidence to show the actual agreement made between several endorsers, notwithstanding it contradicts the

*prima facie* inference appearing from their successive endorsements.

To come now to the question of the statute of frauds. In *Hartley* v. *Sandford*, 37 *Vroom* 627, the case of *Apgar* v. *Hiler*, 4 *Zab*. 812, was not overruled, but distinguished. Recovery was denied upon a verbal promise made by the defendant to indemnify the plaintiff if he would become surety for the son of the promisor. The promisor did not become a party to the instrument upon which the plaintiff became surety. Neither was there any consideration of benefit to the promisor to support his undertaking. In both these respects the case before us is different. The defendant, Hendee, became a party to the note in question, and we think his agreement to indemnify the plaintiff was founded upon a consideration of substantial benefit to Hendee. The consideration arose as follows: Both plaintiff and Hendee were accommodation endorsers for the maker of the note. To secure its payment, the maker delivered a bill of sale to Hendee for personal property of substantial value. There was evidence tending to show that its value was at least equivalent to the amount of the note, but whether the security was or was not ample to satisfy the amount of the note, in our view, makes no material difference. If plaintiff and Hendee were to remain successively liable as endorsers upon the note, Hendee would hold the personal property delivered to him as mortgagee, subject to an accountability both to the maker and to the plaintiff. If by agreement between the parties the plaintiff, instead of looking to the personal property alone for his security, accepted the promise of Hendee to pay the note at maturity if the maker did not, this agreement practically relieved Hendee from any liability to account to the plaintiff for the proceeds of the personal property, provided he carried out his agreement to pay the note in exoneration of the plaintiff. The effect of this was to fix the amount of Hendee's responsibility to the plaintiff in the premises, and leave him at liberty to deal with the property by disposing of it at private sale or otherwise, provided he had the consent of the maker of the note, and provided he indemnified plaintiff

from liability. The *status* thus resulting from Hendee's agreement to indemnify the plaintiff was, in a legal sense, and doubtless in a practical sense, substantially beneficial to Hendee, and furnishes an adequate consideration to support his undertaking upon which the action was based. And so, as respects the statute of frauds, the present case is governed by Apgar *v.* Hiler, and not by Hartley *v.* Sandford.

It follows that the action of the trial judge in nonsuiting the plaintiff was erroneous. The judgment should be reversed, and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 15.