### DAVIS v. BLY et al.

(Supreme Court, Appellate Division, Third Department. July 6, 1898.)

BILLS AND NOTES—ACCOMMODATION INDORSEMENT—EVIDENCE.

The payee testified that the maker had applied to him for a loan, and, on being asked for an indorser, suggested defendant; and that some time after this the maker came to him with a note bearing defendant's indorsement, and, relying thereon, he took it, and advanced the consideration. The maker testified that on applying for the loan the payee informed him a friend of his had some money in trust, which he thought could be gotten on a good note or security; and that he told defendant before he signed that the payee said he could get the money for the maker on a good note, but did not say from whom. *Held*, that the question whether defendant indorsed the note for the accommodation of the payee, or whether he merely intended to bind himself as a second indorser, was for the jury.

Appeal from special term, Essex county.

Action by Truman E. Davis against Norman Bly, impleaded with another. There was a judgment of dismissal as to defendant Bly, and plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Fred. W. Dudley and Francis A. Smith, for appellant.

Rowe, Van Kirk & Pyrke, for respondent.

MERWIN, J. The plaintiff sought to recover the amount of a note of $200, dated October 1, 1895, made by the defendant Gage to the

order of the plaintiff, and payable one year after date, with interest, and indorsed by the defendant Bly. It was alleged in the complaint that before the note was delivered to the plaintiff the defendant Bly, at the request of Gage, and for the purpose of giving Gage credit with the plaintiff, indorsed it as a surety and indorser for Gage, and that thereafter the plaintiff, relying upon the indorsement of Bly, accepted the note for valuable consideration. These allegations the defendant Bly denied, and alleged that he indorsed the note for the purpose of giving the plaintiff credit, and to enable him to discount the same. At the trial at the close of the evidence on the part of the plaintiff the court granted a nonsuit, holding, in substance, that the evidence was not sufficient to carry to the jury the question whether Bly indorsed the note with the intention of becoming a surety for Gage to the plaintiff, or for the purpose of giving Gage credit with the plaintiff.

The plaintiff testified: That about October, 1895, Gage applied to him for a loan of $200, and said he would give a good note, with a good backer, if he could get it, and wanted to know if the plaintiff knew of anybody who had the money. That he (the plaintiff) replied he had got it, and with a good backer would let him have it. That Gage then said, "How will Mr. Bly be?" and plaintiff replied, "Mr. Bly will be all right." That a day or two after this Gage came with the note in suit, having on the back of it Mr. Bly's name, and the plaintiff let him have the money on it. That in doing so he relied on Bly's indorsement. That after the note became due, and the plaintiff had mailed to Bly a notice of its nonpayment, the plaintiff saw Bly. "Asked him if he got my notice. He said he did not know why he should be paying Gage's debts. I said, 'You signed the note, did you not?' 'Well, yes.' I said, 'He can't pay it, and I shall look to you for pay.' He said he should not pay it until he took counsel on it anyway." Mr. Gage was called by the plaintiff as a witness, and testified that he applied to the plaintiff for a loan, and plaintiff told him that a friend of his had some money in trust that he thought he could get for him on a good note or security; that he had previously asked Bly if he would indorse a note for him, and Bly said he would rather he would get some one else; that he subsequently had a conversation with Bly in regard to indorsing the note he gave the plaintiff, and the following occurred:

"Q. What did you say to him then? Ans. He asked me if I had an indorser for the note. I said, 'No.' He asked me if I had the note. I said, 'Yes.' He asked me to let him see it, and I did. I asked him if he would indorse that. He said, 'Yes,' he would indorse that, as he considered Davis good enough, and did not need any indorsement. Q. In either of these conversations, did you say to Mr. Bly that you had applied to one person to indorse for you, and he had refused? A. Yes, sir. Q. Did you say, in either of those conversations, to Mr. Bly, that Mr. Truman Davis had said he could get the money for you on a note, or on a good note? A. Yes, sir. Q. That was before he signed,— before he put his name on this note? A. Yes, sir. Q. Had Mr. Bly been in the habit of indorsing for you? A. He had indorsed for me two or three times, perhaps; can't tell how many times. * * * I told Mr. Bly that Davis told me he could get the money on a good note. Q. Did he say from whom he could get it? No, sir."

"The presumption that one who has indorsed a promissory note in blank, before delivery to the payee, intended to become liable simply

as second indorser, and so not liable to the payee, may be rebutted by parol proof that the indorsement was made to give the maker credit with the payee." Coulter v. Richmond, 59 N. Y. 478. In the case cited it was also held that it was immaterial whether the indorser knew the precise nature of the credit, and that it was sufficient if he knew credit was to be obtained of the payee on the strength of his indorsement. In Meyer v. Hibsher, 47 N. Y. 265, it was held that if one indorsed a note with a knowledge that his name was required by the payee as a condition of making the loan and as security for its payment, he was placed in the same condition to the payee as though it had been done by agreement between them.

In considering this appeal, the plaintiff is entitled to the most favorable inferences deducible from the evidence. Higgins v. Eagleton, 155 N. Y. 466, 50 N. E. 287. From the evidence in the case it might be found that Bly knew that Gage was negotiating with the plaintiff for a loan, and that plaintiff, as a condition of making or procuring a loan, required of Gage a note with a good indorser, and that Bly indorsed the note for the purpose of enabling Gage to comply with this demand of the plaintiff. Bly knew, as it might be inferred, that the plaintiff did not regard Gage as responsible, and therefore required the indorsement of Bly, or some other responsible man, for the purpose of fortifying his (Gage's) credit. The note, apparently drawn by Gage, was payable to the order of the plaintiff, but Bly was informed by Gage that he had no indorser for it. Whether, under the circumstances, Bly had any reason to expect or did expect that the plaintiff was to become the first indorser was at least a question for the jury. No good reason appears in the case for the plaintiff wanting the indorsement of Bly if he himself expected to become the first indorser. The plaintiff, as Gage told Bly, wanted Gage to bring him a good note, not one that he could make good by himself becoming the first indorser. The testimony of the witness Gage on this subject is to be considered in the light of the surrounding circumstances. Whether the plaintiff was to make the loan himself, or obtain it from some one else, was not important if the indorsement of Bly was a condition precedent to any use of the note by plaintiff, and it was not expected that plaintiff would himself become liable on the note, at least as first indorser. Upon the case as presented, it was, I think, for the jury to say whether Bly indorsed the note for the purpose of giving the maker credit with the payee, or with any one who advanced the money on the note, without any expectation on the part of Bly that the payee would become the first indorser. If the jury so found, the plaintiff was entitled to recover. It follows that the nonsuit should not have been granted.

Judgment reversed, and new trial granted; costs to abide the event. All concur.