HADDOCK, BLANCHARD AND COMPANY, INCORPORATED, Respondent, *v.* JOHN C. HADDOCK, Appellant.

1. NEGOTIABLE INSTRUMENTS — IRREGULAR INDORSER OF BILL OF EXCHANGE. A person who signs his name in blank, before delivery, upon the back of a draft, payable to the drawer, which has been accepted by the drawee, is an indorser of such draft within the meaning of section 113 of the Negotiable Instruments Law (L. 1897, ch. 612), which provides that a person who places "his signature upon an instrument otherwise than as a maker, drawer or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

2. SAME — PRESUMPTION AS TO LIABILITY OF INDORSER — ADMISSION OF PAROL EVIDENCE TO SHOW INTENTION OF INDORSER. Prior to the enactment of the Negotiable Instruments Law (L. 1897, ch. 612) it was the rule in this state that a person who put his name on the back of a bill or note before its delivery was presumably a second indorser and not liable to the payee, but the presumption could be rebutted by parol evidence to show that the intention of the indorser was to become surety for some prior party to the instrument. By section 114 of the Negotiable Instruments Law, defining the liability of an irregular indorser, the presumption as formerly established was changed and an irregular indorser is now presumed to be liable in accordance with the express language of that statute. There is nothing in the law, however, to indicate an intention on the part of the legislature to change the former rule relating to the receipt of parol evidence to determine the primary liability as between the persons whose names appear upon the instruments or as between those secondarily liable thereon.

3. SAME — WHEN PAROL EVIDENCE ADMISSIBLE UNDER NEGOTIABLE INSTRUMENTS LAW. Under section 55 of the Negotiable Instruments Law, defining an accommodation indorser and providing as to his liability, parol evidence is necessary to determine whether a party to an instrument, including an indorser thereon, is an accommodation party, and also to determine which other party to the instrument he had accommodated. In an action to charge an indorser of a draft with the amount thereof, on the ground that his indorsement was for the benefit of the acceptor, the admission of such evidence is not prevented by the fact that section 114 of said law, defining the liability of an irregular indorser, does not include a provision to the effect that, if the indorser signed for the accommodation of the acceptor, he is liable to all parties subsequent thereto.

4. SAME — PAROL EVIDENCE ADMISSIBLE UNDER NEGOTIABLE INSTRUMENTS LAW, TO DETERMINE LIABILITY AS BETWEEN MAKER AND INDORSER OF DRAFT. Upon the acceptance of a bill, the acceptor becomes the principal debtor primarily liable to pay the amount thereof, and all

other parties to the instrument, including the maker and indorser, are secondarily liable. The maker, therefore, is an indorser, in legal effect and within the intention of section 118 of the Negotiable Instruments Law, providing that, "as respects one another, indorsers are liable *prima facie* in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise." Parol evidence is, therefore, authorized as between the maker and an indorser of such a bill for the purpose of determining their respective liability.

5. SAME — PAROL EVIDENCE ADMISSIBLE, UNDER NEGOTIABLE INSTRUMENTS LAW, TO OVERCOME PRESUMPTION ARISING FROM POSITION OF INDORSEMENT ON DRAFT, In an action, therefore, brought by the drawer of certain drafts to charge an indorser thereon with their amount, in which the complaint alleges that the bills were so indorsed for the accommodation of the acceptors thereof and for the purpose of giving such acceptors credit with the drawer, parol evidence is properly received to affect or overcome the presumption arising, under section 114 of the Negotiable Instruments Law, from the position of the indorser's name upon the bills. It cannot be considered to have been the intention of the legislature, by the enactment of such section, to establish a rule as to the liability of an irregular indorser conclusive on the parties to the instrument as between themselves in an action where facts showing a different intention are fully alleged.

*Haddock, Blanchard & Co.* v. *Haddock,* 118 App. Div. 412, affirmed.

(Argued June 10, 1908; decided September 29, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered March 19, 1907, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term, a jury having been waived.

The nature of the action and the facts, so far as material, are stated in the opinion.

*M. Edward Kelley* for appellant. Before the Negotiable Instruments Law the contracts created between the parties to negotiable paper were contracts in writing. Parol evidence was not admissible to vary, alter or contradict their terms, which were deemed to be fully expressed on the face of the instrument. (Byles on Bills [16th ed.], 114; 1 Daniel on Neg. Inst. §§ 707a, 707b, 717; Norton on Bills & Notes, §§ 67, 68; *Martin* v. *Cole,* 104 U. S. 30; *Hall* v. *Newcomb,* 7 Hill, 416; *Spies* v. *Gilmore,* 1 N. Y. 321; *Cottrell* v. *Conklin,* 4 Duer, 50; *Bank of Albion* v. *Smith,* 27 Barb. 489;

*Bird* v. *Kay*, 40 App. Div. 538; *Johnson* v. *Ramsay*, 43 N. J. L. 279; *Prescott Bank* v. *Caverly*, 7 Gray, 217; *Essex Co.* v. *Edmands*, 12 Gray, 273; *Wright* v. *Morse*, 9 Gray, 337.) An exception to this rule forbidding the variance of these contracts by parol had arisen in this country long before the statute in the case of irregular indorsements of instruments payable to the order of a person other than the maker or drawer. The indorser might accordingly be held liable to the payee of such paper by the aid of parol evidence. (1 Daniel on Neg. Inst. §§ 709, 711; Norton on Bills & Notes, § 68; *Chaddock* v. *Vanness*, 35 N. J. L. 517; *Perkins* v. *Catlin*, 11 Conn. 213; *Bigelow* v. *Colton*, 13 Gray, 309; *Rey* v. *Simpson*, 22 How. [U. S.] 341; *Barrows* v. *Lane*, 5 Vt. 161; *Kingsland* v. *Koeppe*, 137 Ill. 344; *Seymour* v. *Mickey*, 15 Ohio St. 515; *Lake* v. *Stetson*, 13 Gray, 310; *Dubois* v. *Mason*, 127 Mass. 37; *Coulter* v. *Richmond*, 59 N. Y. 481.) But the exception which permitted the use of parol evidence to vary the contract of indorsement had never, prior to the statute, been extended to irregular indorsements of instruments drawn payable to the order of the maker or drawer. And the indorser, therefore, could not be held liable to the payee of such paper. (*Smalley* v. *Wight*, 44 Me. 442; *Smith* v. *Lusher*, 5 Cow. 711; *Hooper* v. *Williams*, 2 Exch. 13; 1 Daniel on Neg. Inst. §§ 707a, 707b; *F. Nat. Bank* v. *Payne*, 111 Mo. 291; *Dubois* v. *Mason*, 127 Mass. 37; *Lake* v. *Stetson*, 13 Gray, 310; *Bigelow* v. *Colton*, 13 Gray, 309; *Hately* v. *Pike*, 162 Ill. 248; *C. T., etc., Bank* v. *Nordgren*, 157 Ill. 663; *Clapp* v. *Rice*, 79 Mass. 403; *Heidenheimer* v. *Blumenkron*, 56 Tex. 308.) The Negotiable Instruments Law renders irregular indorsers of paper drawn payable to the order of the maker or drawer liable only to parties subsequent to the payee, in accordance with the prior law. The plaintiff cannot, therefore, recover upon the bills of exchange in suit. (L. 1897, ch. 612, §§ 111, 113, 114; *Chaddock* v. *Vanness*, 35 N. J. L. 523; *Perkins* v. *Catlin*, 11 Conn. 213; *Hall* v. *Newcomb*, 7 Hill, 416; *E. Co.* v. *Edmands*, 12 Gray, 273; *Rey* v. *Simpson*, 22 How. [U. S.] 341; *Steele* v.

*McKinlay*, L. R. [5 App. Cas.] 754 ; *C. Bank* v. *Zimmerman*, 185 N. Y. 216 ; *Brewster* v. *Shrader*, 26 Misc. Rep. 482 ; *N. C. Bank* v. *Toplitz*, 81 App. Div. 593 ; *Coulter* v. *Richmond*, 59 N. Y. 478.)

*Israel T. Deyo* and *A. J. McCrary* for respondent. Defendant having indorsed the drafts for the accommodation and benefit of the acceptors, before delivery, and to give them credit with plaintiff, and the drafts having been duly protested and notice of protest having been duly given to the defendant, and the drafts having been taken up by the plaintiff, it follows that defendant is liable to plaintiff in this action. (*Coulter* v. *Richmond*, 59 N. Y. 478 ; *Spies* v. *Gilmore*, 1 N. Y. 321 ; *Hall* v. *Newcomb*, 7 Hill, 416 ; *Richards* v. *Waring*, 1 Keyes, 576, 581 ; *Good* v. *Martin*, 95 U. S. 94 ; *Noyes* v. *Bird*, 11 Mass. 436 ; *Irish* v. *Cutter*, 31 Me. 536 ; *Witherow* v. *Slayback*, 158 N. Y. 649 ; *Davis* v. *Bly*, 164 N. Y. 527 ; Daniel on Neg. Inst. [5th ed.] §§ 710, 711, 714 ; Eaton & Gilbert on Com. Paper, 413 ; *Robinson* v. *Lyle*, 10 Barb. 512.)

CHASE, J. The plaintiff is a foreign corporation authorized to do business in this state and engaged as a wholesale dealer in coal at Binghamton. The Plymouth Coal Company, a corporation, was engaged in the operation of coal mines in Pennsylvania prior to March, 1902, at which time it went into the hands of a receiver. The defendant was the president and manager of said coal company and the owner of substantially all of its stock.

The defendant was, until May, 1902, the president of the plaintiff and during all the times herein mentioned had charge of plaintiff's New York office. At the time when the note and bills hereinafter mentioned were given the plaintiff was engaged in selling on commission at wholesale, the coal mined by the Plymouth Company or its receiver, under a contract made with said coal company. One B., the vice-president of the plaintiff prior to May, 1902, and its president thereafter, passed upon the financial responsibility of persons seeking

credit with the plaintiff, and he arranged with a trust company at Binghamton to discount commercial paper of the plaintiff's customers.    The Lenape Coal Company, the Living Stone Coal Company and the Montauk Coal Company were severally organized as corporations and engaged in the business of retailing coal in or near the city of New York and the defendant was the owner of substantially all of the stock of each.    Soon after the organization of such corporations to retail coal, they sought credit with the plaintiff and their financial responsibility was investigated by B.    The responsibility of each was found to be unsatisfactory and B. so reported to the defendant, and the defendant replied that said companies were his companies and he would guarantee their credit by indorsing their paper.    On February 13, 1902, said Lenape Coal Company for value received executed and delivered to the plaintiff as payee its certain promissory note for $880.96, dated on that day, payable four months after date at a bank in the city of New York.

On and between January 27, 1902, and May 13, 1902, the plaintiff for value received made thirty several drafts each on either said Lenape Coal Company, said Living Stone Coal Company or said Montauk Coal Company, payable to the order of itself as payee, which drafts aggregated $26,833.15 each of which drafts was for value received accepted by the coal company on which it was drawn payable at a place and on a day in each respectively specified.

The drafts or bills were all similar in form, and the following is a copy of one of said bills:

"1327.41-100.

"COAL OFFICE OF HADDOCK, BLANCHARD & CO.,
"INCORPORATED.

"NEW YORK, *Apl.* 28, 1902.

"Four months after date pay to the order of ourselves Thirteen hundred twenty-seven and 41 / 100 Dollars.    Value received and charge the same to account of Haddock, Blanchard & Co., Incorporated.    C. N. BLANCHARD,
"Asst. Treas.
"To MONTAUK CO.,
BROOKLYN, N. Y."

Indorsed across the face:

"Accepted. Payable at The Binghamton Trust Co., Binghamton, N. Y. The Montauk Coal Co. .

"CHAS. B. SMITH, <em>Treas.</em>"

Indorsed on the back:

"Haddock, Blanchard & Co., Incorporated. C. N. Blanchard, Assistant Treasurer.

"JOHN C. HADDOCK."

Said note after it had been signed by said Lenape Coal Company and each of said bills after they had been accepted by the corporation on which they were severally drawn were indorsed by the defendant before delivery, and thereafter each of them so indorsed was before maturity delivered to the plaintiff as payee, and the plaintiff thereafter and prior to their maturity severally indorsed and procured them to be discounted at a trust company at Binghamton.

Said note and each of said bills were given and delivered to the plaintiff for the purchase price of coal sold and delivered by the plaintiff to the acceptors respectively of said bills and the maker of said note, or in renewal in whole or in part of prior notes or bills given or accepted for the purchase price of coal so sold and delivered.

Said note and each of said bills were so indorsed by the defendant for the accommodation of the maker of said note and the acceptor of said bills respectively and for the purpose of giving such maker and acceptors credit with the plaintiff, and in pursuance of an agreement between the defendant and the plaintiff by which the plaintiff agreed to sell coal on credit to the acceptors of said bills and to the maker of said note upon the defendant's guaranteeing the credit of said companies respectively, and the plaintiff was induced to take said accepted bills and said note and each of them for such coal by reason of the indorsement of the said defendant and pursuant to said agreement that the defendant would be liable thereon to the plaintiff in case the respective corporations primarily liable thereon should make default in payment thereof.

The proceeds of said bills and note were remitted to the defendant at the New York office of the plaintiff to provide funds to pay for coal and other current expenses. At the time when said note and bills respectively became due they were presented for payment at the place where they were respectively made payable and payment duly demanded, which was refused, and thereupon each was duly protested for non-payment, and notice thereof given to the plaintiff and to said defendant. Thereafter the plaintiff was compelled to take up said note and drafts and pay the amount due thereon respectively and became the owner and holder thereof and of each of them.

This action is brought to compel the defendant to pay to the plaintiff the amount of said note and bills pursuant to his said agreement with the plaintiff when they were severally indorsed by him and the facts upon which the plaintiff's claim is based are stated in the complaint.

The defendant denies that he indorsed the note and bills for the accommodation of and as surety for the retail coal companies respectively, but the evidence is sufficient to sustain the findings of the court from which the statements of fact in this opinion have been taken.

As the facts are found, if the intention of the parties is to prevail, the defendant should be required to pay to the plaintiff the amount of such note and bills as established by the judgment.

The defendant contends that the position of his name upon the note and bills conclusively establishes that he indorsed the several instruments without liability to the plaintiff and that parol evidence should not have been received to affect or overcome the alleged conclusive presumption arising from his indorsements as made.

In the early decisions by the courts in this state there was some confusion relating to the liability of a person who indorsed a note or bill prior to its delivery. (*Labron* v. *Woram*, 1 Hill, 91.; *Herrick* v. *Carman*, 12 Johns. 159; *Hall* v. *Newcomb*, 3 Hill, 233; *S. C.*, 7 Hill, 416; *Hahn* v. *Hull*, 2 Abb. Pr. 352.)

This court in *Moore* v. *Cross* (19 N. Y. 227), referring to a case of a person who for the accommodation of a maker indorsed a note payable to a third person, say : " Some confusion has been thrown around this subject from what has been finally settled to have been an error, treating such an indorsement as a guaranty and charging the indorser as a maker or guarantor.  This doctrine was advanced in *Herrick* v. *Carman* (12 Johns. 160), and was adjudged in *Nelson* v. *Du Bois* (13 Johns. 175) and *Campbell* v. *Butler* (14 Johns. 349).  It was attacked in *Dean* v. *Hall* (17 Wend. 214) and in *Seabury* v. *Hungerford* (2 Hill, 80), and was finally overthrown in *Hall* v. *Newcomb* (3 Hill, 233), and the same case in error (7 Hill, 416).  The Chancellor in his opinion in the latter case says : ' If the object of the second indorser was to enable the drawer to obtain money from the payee of the note, upon the credit of the accommodation indorser, he may indorse it without recourse ; and, by such indorsement, may either make it payable to the second indorser, or to the bearer ; and such original payee may then, as legal holder and owner of the note, recover thereon against such second indorser, upon a declaration stating such special indorsement by him, and subsequent indorsement of the note to him by the second indorser."

The court further say : " If a note be made and indorsed for the accommodation of A, who indorses it to another person, and afterward in the course of trade, again becomes the holder, he could maintain no action against the maker and indorser for his accommodation, notwithstanding their apparent liability to him on the face of the paper.  The fact of the accommodation making and indorsing might be proved to defeat the action and it would establish that the agreement of the parties, contrary to the legal inference from the face of the paper, did not impose a liability on the maker and indorser to pay the party suing."

There has always been conflict among the courts of the several states both in asserting the principles upon which irregular indorsers upon commercial paper are to be held

and in the conclusion arrived at in particular cases litigated. The number of cases is so great, and the possibility of even a partial reconciliation of them so remote, that we will confine our citation of authorities wholly to those in this state.

It was well settled in this state for many years prior to the enactment of the Negotiable Instruments Law that a person who puts his name on the back of a bill or note before its delivery, is presumably a second indorser and not liable to the payee, but the presumption could be rebutted by parol evidence to show that the intention of the indorser was to become surety for some prior party to the instrument. (*Moore* v. *Cross, supra; Bacon* v. *Burnham*, 37 N. Y. 614; *Meyer* v. *Hibsher*, 47 N. Y. 265; *Phelps* v. *Vischer*, 50 N. Y. 69; *Clothier* v. *Adriance*, 51 N. Y. 322; *Hubbard* v. *Matthews*, 54 N. Y. 43; *Coulter* v. *Richmond*, 59 N. Y. 478; *Easterly* v. *Barber*, 66 N. Y. 433; *Jaffray* v. *Brown*, 74 N. Y. 393; *Witherow* v. *Slayback*, 158 N. Y. 649; *Smith* v. *Weston*, 159 N. Y. 194; *Davis* v. *Bly*, 32 App. Div. 124; affd., 164 N. Y. 527; *Far Rockaway Bank* v. *Norton*, 186 N. Y. 484; *Lester* v. *Paine*, 39 Barb. 616; *Foerster* v. *Squier*, 46 N. Y. S. R. 289; *Reed* v. *Photo-Gravure Co.*, 38 N. Y. S. R. 467; *Wyckoff* v. *Wilson*, 36 N. Y. S. R. 35; *Luft* v. *Graham*, 13 Abb. [N. S.] 175; *Draper* v. *Chase Mfg. Co.*, 2 Abb. [N. C.] 79; *Holz* v. *Woodside Brewing Co.*, 83 Hun, 192; *Meise* v. *Doscher*, 68 Hun, 557; *Bank of Port Jefferson* v. *Darling*, 91 Hun, 236; *Hendrie* v. *Kinnear*, 84 Hun, 141; *Montgomery* v. *Schenk*, 82 Hun, 24; *McPhillips* v. *Jones*, 73 Hun, 516; *Staiger* v. *Theiss*, 19 Misc. Rep. 170; *Rose* v. *Packard*, 4 Weekly Digest, 427; *Cuming* v. *Roderick*, 16 App. Div. 339; *McMoran* v. *Lange*, 25 App. Div. 11; *Howard* v. *Van Gieson*, 46 App. Div. 77; *Nagel* v. *Lutz*, 41 App. Div. 193.)

The Negotiable Instruments Law was first enacted in this state in 1897. (Laws of 1897, chapter 612.) Section 113 of the said law provides: " A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is

deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

The defendant was within this definition an indorser of each of said instruments.

Section 114 of the said law provides: "Where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as indorser in accordance with the following rules:

"1. If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties.

"2. If the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer.

"3. If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee."

By this section of said law the presumption as established by the courts in this state was changed, and an irregular indorser is now presumed to be liable in accordance with the express language of the statute. Questions relating to the sufficiency of the pleadings are settled by the statute. A complaint upon a note or bill without alleging a collateral agreement between the parties whose names are on the instrument seeking to recover against a person except as provided by the statute, would clearly be demurrable.

The note of the Lenape Coal Company was payable to the plaintiff, a third person, and the defendant, according to the provisions of said section 114, is liable to the plaintiff, the payee therein. No serious contention has been made to the contrary. The serious question for consideration arises from the fact that the bills were payable to the maker and drawer thereof respectively and the defendant as an indorser thereon before delivery is not under the statute *prima facie* liable thereon to the plaintiff. Should parol evidence have been allowed to show the intent of the parties? We have not discovered any exception to the rule as established by the courts of this state allowing parol evidence as between the parties

whose names appear on the bill or note to determine their liability as between themselves. It is frequently stated that where a note is payable to a person other than the maker and is indorsed by a third person before delivery the intention of the indorser is ambiguous and uncertain on the face of the paper and such uncertainty justifies the receipt of parol evidence to determine the true intention of the parties. We do not see that any greater certainty exists upon the face of a bill as to the true intention of the parties where it is drawn to bearer or to the order of the maker, and it is indorsed by a third person after acceptance by the acceptor and before delivery to the payee and maker. There is a certain rule of presumption determined by common law or by statute, but the alleged reason for the rule in either case is not very apparent. The long-established rule to allow parol evidence that the intention of the parties may prevail seems to have met with somewhat general approval without discussing specifically the principles upon which such evidence is admitted.

It is said by Daniel in his work on Negotiable Instruments (5th ed. section 710) : " Whatever diversities of interpretation may be found in the authorities on the subject, they very generally concur, though not with entire unanimity, that, as between the immediate parties, the interpretation ought to be in every case such as will carry their intention into effect, and that their intention may be made out by parol proof of the facts and circumstances which took place at the time of the transaction." (Story on Promissory Notes, section 479.)

In *Good* v. *Martin* (95 U. S. 90) the court say : " Considerable diversity of decision, it must be admitted, is found in the reported cases where the record presents the case of a blank indorsement by a third party, made before the instrument is indorsed by the payee and before it is delivered to take effect, the question being whether the party is to be deemed an original promisor, guarantor or indorser. Irreconcilable conflict exists in that regard ; but there is one principle upon the subject almost universally admitted by them all, and that is, that the interpretation of the contract ought in every

case to be such as will carry into effect the intention of the parties, and in most cases it is admitted that proof of facts and circumstances which took place at the time of the transaction are admissible to aid in the interpretation of the language employed. (*Denton* v. *Peters*, L. R. [5 Q. B.] 475.)

" Facts and circumstances attendant at the time the contract was made are competent evidence for the purpose of placing the court in the same situation and giving the court the same advantages for construing the contract which were possessed by the actors. (*Cavazos* v. *Trevino*, 6 Wall. 773.) "

It must constantly be borne in mind that the acceptance of a bill makes the acceptor the principal debtor. A bill when accepted becomes similar to a promissory note, the acceptor being the promisor and the drawer standing in the relation of an indorser. (Daniel on Negotiable Instruments [5th edition], section 532.) There is nothing in the Negotiable Instruments Law to indicate an intention on the part of the legislature to change. the rule as established in this state relating to the receipt of parol evidence to determine the primary liability as between the persons whose names appear upon the instrument or as between those secondarily liable thereon.

By section 55 of the Negotiable Instruments Law it is provided : " An accommodation party is one who has signed the instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

Parol evidence is necessary to determine whether a party to an instrument, including an indorser thereon, is an accommodation party, and also to determine which other party to the instrument he had accommodated. The plaintiff was the holder of the note for value, and the evidence showed that the defendant was an accommodation indorser for the benefit of the acceptor.

The last subdivision of section 114, as we have quoted, makes parol evidence necessary to establish whether the indorser signed the instrument for the accommodation of the payee. It is true that this section does not expressly state that if the indorser signed for the accommodation of the acceptor he is liable to all parties subsequent to the acceptor, but the fact that such a provision is not included in section 114 does not prevent the admission of parol evidence to determine generally the questions relating to an accommodadation party as provided by section 55.

The Negotiable Instruments Law by section 7 provides: "In any case not provided for in this act the rules of the law merchant shall govern."

By section 118 of the Negotiable Instruments Law it is provided: " As respects one another, indorsers are liable *prima facie* in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise."

As we have seen, upon the acceptance of the bill the acceptor becomes the principal debtor and the one primarily liable to pay the amount of the bill, and all other parties to the instrument, including the maker and indorser, are secondarily liable. We are of the opinion that the maker of the bill is in legal effect and within the intention of this section an indorser, and that as between the plaintiff and the defendant parol evidence is authorized to determine the liability as between them.

The articles of the Negotiable Instruments Law relating to the presentation of bills and notes for payment and notice of dishonor (Articles 7 and 8) further show an intention by the legislature to leave the order of liability among those whose names are on the instrument subject to determination by any competent evidence.

Section 130 provides: " Presentment for payment is not necessary in order to charge the person primarily liable on the instrument. * * * But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers."

Section 139 provides: "Presentment for payment is not required in order to charge the drawer where he has no right to expect or require that the drawee or acceptor will pay the instrument."

Section 140 provides: "Presentment for payment is not required in order to charge an indorser *where the instrument was made or accepted for his accommodation,* and he has no reason to expect that the instrument will be paid if presented."

Section 160 provides: "Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

Section 186 provides: "Notice of dishonor is not required to be given to an indorser in either of the following cases  *  *  *:

"3. *Where the instrument was made or accepted for his accommodation.*"

There is no reason that we can conceive why the legislature should intend to change the rule in regard to the admission of parol evidence as it had existed in this state for many years. All of the quotations that we have made from the Negotiable Instruments Law show that it has enlarged rather than restricted the rules allowing parol evidence to show the true liability and relation of the parties whose names appear upon the bill or note in all actions between themselves. It is certainly very material to the drawer of a bill whether an indorser signs it at his request or at the request and for the benefit of the acceptor. We do not think it was the intention of the legislature by the enactment of section 114 of the Negotiable Instruments Law to establish a rule as to the liability of an irregular indorser conclusive on the parties to the instrument as between themselves in an action where the facts showing a different intention are fully alleged. All of the decisions of our courts since the enactment of the Negotiable Instruments Law tend to sustain the views herein expressed. (*Corn* v.

*Levy*, 97 App. Div. 48; *Kohn* v. *Consolidated Butter & Egg Co.*, 30 Misc. Rep. 725.)   In the case last mentioned McADAM, J., said : " Prior to the statute of 1897 (*supra*) the allegation referred to was a necessary one in such cases, and, if denied, the onus of proving the allegation was on the plaintiff, for the payee was presumably the first indorser.   (Daniel's Neg. Inst. [4th ed.] sec. 704; Wood's Byles Bills, 151, note, and cases before cited.)   Since the statute the legal presumption is changed where the complaint alleges that the irregular indorsers indorsed the paper ' before delivery ' to the payee. And when this fact is established the onus is cast upon such indorsers to allege and prove that, notwithstanding such delivery, the payee was to become first indorser according to the customary form of the contract and that they did not indorse for the purpose of lending their credit to the maker or with the intention of becoming liable to the payee.   That this is the proper interpretation of the act is obvious.   The true intention of indorsers as between themselves can always be shown by oral evidence.   (Daniel's Neg. Inst. *supra ;* 4 Am. & Eng. Ency. of Law [2d ed.] 492 *et seq.; Guild* v. *Butler*, 127 Mass. 386; *Cady* v. *Shepard*, 12 Wis. 639; Benjamin's Chambers Bills [2nd Am. ed.], 250; *Witherow* v. *Slayback*, 158 N. Y. 649.)   To go further and decide that the statute intended to create an incontestable liability against irregular indorsers would be to impute to the legislative wisdom a design repugnant to every notion of judicial procedure, especially in a provision enacted in the interest of law reform."

The judgment should be affirmed, with costs.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur.

Judgment affirmed.