## HARRIS v. JONES.

(136 N. W. 1080.)

**Principal and surety — remedies of surety — action for contribution will not lie.**

1. Defendant was requested by one T. to become his surety upon a negotiable promissory note. He declined until T. should obtain plaintiff to sign first. This information was conveyed to plaintiff who signed as surety, and thereupon defendant also signed as a surety. Later, and after judgment upon the note, plaintiff paid the note, and brings this suit for contribution. *Held,* that while plaintiff and defendant were cosureties as to the payee of the note, yet as between themselves such relation did not exist, but that defendant was a surety for both T. and the plaintiff, and plaintiff was a principal as to defendant.

Therefore an action for contribution will not lie. This principle is supported by the great weight of the common law, and has been enacted into the statute law of this state with the new negotiable instrument law. See §§ 6366 and 6370, Revised Codes 1905.

**Evidence — negotiable paper — principal and surety — liability of indorsers.**

2. Indorsers of negotiable paper, as respects one another, are prima facie liable in the order in which they indorse, but evidence is admissible to show that each has agreed to be liable for the principal debtor alone, and therefore that all indorsers are cosureties; but in the case at bar plaintiff has failed to show any such agreement, and on the contrary what evidence was offered tended to show that plaintiff and defendant both understood that the liability of plaintiff should be for T. alone, and the liability of defendant should be for T. and plaintiff.

Opinion filed June 29, 1912.

Appeal by defendant from a judgment of the District Court for Richland County; *Allen,* J., in plaintiff's favor in an action for contribution.

Reversed.

---

Note.—For the right of one surety to enforce contribution from another, and the remedies for its enforcement, see notes in 10 Am. St. Rep. 639, and 70 Am. St. Rep. 450.

*McCumber & Forbes,* of Wahpeton, and *Martin Scramstad,* of Wynd-mere, for appellant.

*Wolfe & Schneller,* of Wahpeton, for respondent.

BURKE, J. In the spring of 1906, one Carl Tronsgard, a druggist of this state, was indebted to Boyes Brothers and Cutler, wholesalers, in the sum of $805.11. Being pressed for payment, he applied to Jones, the cashier of the local bank, to indorse a note for that amount, due in one year, and thus secure a year's extension upon his debt. Jones replied that, owing to his position in the bank, and his bonds, he could not assume the risk, unless he had security; and, to use Jones's own words, "it happened that Tronsgard asked me to sign a note with him for about $800,—because of the business I was in—in the bank—it was unlawful, that is, it wouldn't be safe to do it, I told him on account of my personal bonds, unless I had some security to protect me. I says, if you get your brother-in-law, Harris, to sign that first, so there would be no risk on my part, I would sign, and he said he would go and see him, and he brought back the note with his name on it, and I signed it." That Tronsgard related to Harris the substance of the conversation had with Jones is apparent from the testimony of Harris himself, wherein he says in answer to a question: "Q. And didn't Tronsgard say that he first went to Jones to get him to sign the note, but that he wouldn't sign the note until you first signed it? A. Yes." And again he was asked: "Q. But, however, he did say that Martin Jones had said he wouldn't sign until you had signed? A. Yes, sir." And still again he was asked: "Q. What was the talk you had with Tronsgard about your signing that note, and Martin Jones signing it? A. He says Martin would sign, if I did. Q. Martin would sign if you signed it first? A. Yes, sir." That this was the understanding of both Harris and Jones further appears from the correspondence between these two persons written before the lawsuit was begun. At all events the note was signed by Tronsgard as maker, and indorsed upon the back first by Harris and next by Jones. Two others signed their names later, but their rights are not in litigation herein. When the note became due it was not paid and was reduced to judgment, and an execution placed in the hands of the sheriff. When a threat of levy was made to Harris he paid and caused to be satisfied of record the judgment, and took in his

own name two notes from Tronsgard and his wife, for the amount of the debt, which notes fell due in about six months' time. After the maturity of said notes, Harris sued Jones for contribution as a cosurety, under § 6110, Revised Codes of 1905, alleging that the Tronsgards and the other sureties were insolvent. The case is before us for trial *de novo*.

1. The first question arising is the relation of Jones to Harris. Counsel for both sides seem to act upon the assumption that they were cosureties for all purposes, and the trial court naturally followed them. This relation existed, of course, between them, for the view point of the payee of the note, Boyes Brothers and Cutler, but when we come to consider the matter from the standpoint of Jones and Harris a very different relationship exists. Jones had refused to extend his name as a surety for Tronsgard alone. He told Tronsgard that he would not sign. That Tronsgard told this to Harris there can be no doubt. Harris admits that Tronsgard told him that Jones would not sign the note until he, Harris, had signed it first. It thus appears, that Jones was a surety upon the note for both Tronsgard and Harris, only bound to pay if neither of the others paid it. Of course, he could not assert this defense in a suit by the payee of the note, but that is not before us.

The first time this doctrine was announced, so far as we are able to learn, was in the case of Craythorne v. Swinburne, 14 Ves. Jr. 160, 9 Revised Rep. 264, 21 Eng. Rul. Cas. 636. The facts in that case being almost identical with these. It was therein announced that while the several persons signing their names as indorsers upon the back of a promissory note were liable to each other in the order in which they had signed, because the presumption was that each signer obligated himself upon the strength of all of the names before his, yet it might be shown by parol that all of the signers were in fact sureties for the original debtor alone, and consequently cosureties with each other and liable to contribution. This principle was followed with very few dissents for nearly a hundred years, many of the cases being confused with the question of the liability towards the payee of the note, but upon the simple question of the liability as between the cosureties being practically unanimous. To those wishing a full list of these decisions, we refer to 7 Cyc. pages 664 to 673. Thus stood the law when the various states, including North Dakota, adopted the negotiable in-

strument law, §§ 6303 to 6498, Revised Codes 1905. Section 6366, in particular, seems to have been intended by the framers of said law to give expression to the well-settled law upon that subject. It reads: "When a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as an indorser in accordance with the following rules: (1) If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties" (subdivisions 2 and 3 not being in point). Section 6370 reads: "As respects one another, indorsers are liable prima facie in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise. Joint payees or joint indorsees who indorse are deemed to indorse jointly and severally."

2. From the established law, therefore, of our state, it appears that, prima facie, at least, Harris was liable to Jones for the full debt, in case Jones paid it, and liable to pay it himself in full without right of contribution from any subsequent indorser. Of course he might show by evidence, parol or written, that such was not the true understanding, but that Jones meant to be bound for Tronsgard alone the same as did Harris, but this burden is upon Harris. The evidence already quoted shows that Harris offered no such evidence, but on the contrary the evidence received at the trial showed the very opposite, to wit, that Jones refused to be bound for Tronsgard alone.

That this is the proper construction of the negotiable instrument law is supported by the following named cases, arising upon a similar state of facts and based upon the same statute:

Mercantile Bank v. Busby, 120 Tenn. 652, 113 S. W. 390; Haddock v. Haddock, 192 N. Y. 499, 85 N. E. 682, 19 L.R.A. (N.S.) 136 (valuable note by editor); Citizens' Nat. Bank v. Burch, 145 N. C. 316, 59 S. E. 71; Wilson v. Hendee, 74 N. J. L. 640, 66 Atl. 413; 7 Cyc. 673 (F) and cases cited, note 84 to the same found in the Cyc. annotations.

Harris and Jones not being cosureties upon the note in question, no cause of action existed in favor of Harris. The trial court is directed to change the judgment of the lower court to conform to this opinion.