In the Matter of the Estate of Benjamin Faigelman, Also Known as Bennie Faigelman, Also Known as Barnet Faigelman, Also Known as Fogelman, Deceased.

Surrogate's Court, Kings County, December 11, 1931.

*Miles F. McDonald,* special guardian for the infants.

*Bernard I. Shulman,* for the respondents.

*I. B. Block,* for the administratrix.

Wingate, S. The single question before the court for present determination in this accounting relates to the validity of two rejected claims aggregating $418.24, presented against the estate by Samuel Watterman and Abraham Silverberg. They arise as a result of a certain promissory note executed by the decedent, his wife, the claimants and two others, to the Food Dealers Loan and Investment Corporation, on June 10, 1929. Suit was brought on this note by the payee and a settlement was effected pursuant to which the sum claimed was paid by these respondents.

Certain oral testimony was offered in support of the claim, but as this involved personal transactions between claimants and the deceased, it was rejected by the court pursuant to the provisions of section 347 of the Civil Practice Act. Thereupon certain exhibits were put in evidence over the objection of the administratrix, ruling upon the objection being reserved. The first exhibit was

the note which gave rise to the liability to the Food Dealers Loan and Investment Corporation. In terms this was a joint note by which the makers agreed to pay the payee the sum of $1,000 fifty-two weeks after its date. It had six lines for signatures. On the first appeared the signature of the decedent; on the second that of his wife, the present administratrix; on the third that of Louis Feit, who is not a party to this proceeding and who does not appear to have been served in the action on the note by the payee; on the fourth of Morris Wedinak, who is also not a party here; on the fifth that of Samuel Watterman, one of the present claimants; and on the sixth that of Abraham Silverberg, the other claimant. This note is on a large special form, containing many agreements and covenants in small print, none of which are presently pertinent. Beneath the space for the signatures the following printed directions appear: " The borrower sign full name on line 1; if married, wife must sign on line 2; co-makers' full name on lines 3 and 4."

Exhibit 3 is an application for a loan bearing the same loan number as the note, dated May 23, 1929, and signed by the decedent. So far as presently material, this application reads as follows:

" *To the Food Dealers Loan and Investment Corporation:*

" I, the undersigned, hereby apply to you for a loan in the sum of $1,000 for a period of 52 weeks, or less, from date of granting Loan, the proceeds of which loan are to be used by me solely for the purpose of business and agree if the loan is granted, to meet all installments thereon promptly, as they become due, and comply with each and every rule and regulation of your Corporation. And as security therefor I offer and deposit with you a note signed by me and co-makers whose names and statements appear and are submitted herewith. I authorize your Corporation to verify the statements in my application and to obtain any information that you may require in connection with the application which shall remain your property.

" B. FAIGELMAN

"*Applicant.*"

Annexed thereto and forming a part of the loan application are statements respecting the financial affairs and personal statistics of the decedent, of Feit, Watterman and Silverberg, that of the decedent being headed: "Applicant's statement," and those of each of the others, " Co-makers Statement." From these it appears that the decedent was at the time in the fish business; that Silverberg was a blacksmith-wheelright, and that Watterman conducted a shoe store. Respondent's Exhibit 4 was a check of the payee

of the note, dated June 10, 1929, payable to the order of the decedent in the sum of $927.50, and indorsed by him.

The administratrix strongly contested the propriety of the admission of these exhibits on the alleged ground that they constituted extrinsic evidence to vary a written instrument, namely, the note; and the memorandum submitted on her behalf cites many cases determining that extrinsic evidence for the purpose of varying a written instrument is inadmissible. Analysis of these cases, however, demonstrates that they were merely determinative of the applicability of such rule in a controversy to which the payee of a note, or obligee on some other obligation, was a party. Such a question, however, is obviously very different from that presented in the case at bar. Here there is no claim that all of the comakers on the note were not jointly and severally liable to the payee. What is contended is that as between the several comakers, the decedent was the principal debtor, and that the claimants were merely accommodation parties. On such an issue it has been the uniform law since the earliest times that parol or extrinsic evidence is admissible to show the relations between parties.

In *Robison* v. *Lyle* (10 Barb. 512) the court says (at p. 515): "As between the makers of the note and the holder all are alike liable — all are principals — but, as between themselves, their rights depend upon other questions which are the proper subject of parol evidence." Again (at p. 517): " It became necessary, therefore, to have recourse to extrinsic evidence. That evidence must, from the very nature of the case, consist of the declarations of the parties at the time of the transaction. The negotiation which resulted in the loan, was as much a part of the transaction, as the receiving of the money. What was said by the parties, at either of these interviews, was pertinent evidence for the purpose of showing what was the true character of the defendant's contract."

The authority of the rule noted in this case is expressly recognized by the Court of Appeals in *Easterly* v. *Barber* (66 N. Y. 433), in which the court says (at p. 436), " an agreement among the sureties, arranging their eventual liabilities among themselves in a manner different from what the law would prescribe, in the absence of an express agreement, would not contradict any of the terms of the bond. * * *

" No reason exists, however, why the same principle is not applicable to notes and bills of exchange. The terms of the contract contained in instruments of this character, which are within its scope to define and regulate, cannot be changed by parol; but the understanding between the indorsers is a distinct and separate subject, an outside matter, which may be properly proved inde-

pendent of and without any regard to the instrument itself. This rule is distinctly established in reference to joint makers of promissory notes."

The relation of an accommodation maker is expressly recognized in section 55 of the Negotiable Instruments Law, and subsequent to its enactment it was determined by the Court of Appeals in *Haddock, Blanchard & Co.* v. *Haddock* (192 N. Y. 499) that the enactment of this law had not varied the previously existing rule, permitting a demonstration *dehors* the instrument of the actual relation between the parties thereto. The court says (at p. 508): " Should parol evidence have been allowed to show the intent of the parties? We have not discovered any exception to the rule as established by the courts of this state allowing parol evidence as between the parties whose names appear on the bill or note to determine their liability as between themselves." Again (at p. 510): " There is nothing in the Negotiable Instruments Law to indicate an intention on the part of the legislature to change the rule as established in this state relating to the receipt of parol evidence to determine the primary liability as between the persons whose names appear upon the instrument or as between those secondarily liable thereon. * * *

" Parol evidence is necessary to determine whether a party to an instrument, including an indorser thereon, is an accommodation party, and also to determine which other party to the instrument he had accommodated."

Whereas, therefore, it is entirely apparent that the testimony of the claimants respecting personal dealings between them and the decedent relating to this transaction was inadmissible by reason of the provisions of section 347 of the Civil Practice Act, it is equally obvious that any evidence which did not infringe upon the provisions of this section was admissible, and is to be considered by the court in its determination.

It is reasonably apparent from the exhibits thus found to be properly within the consideration of the court that the transaction which gave rise to the execution of the note by the claimants as comakers, and its giving to the payee named therein, was one for the benefit of the decedent and from which he, *prima facie* at least, received the sole benefit. This is indicated by the statements of the application above quoted and by the fact that the check for the loan was drawn solely to his order. This demonstration shifted to the administratrix the burden of going forward with proof in rebuttal to indicate that the relation of the claimants to the decedent in the transaction was other than that of accommodation parties. Since no proof whatsoever in this direction was

offered by her, it must be held that the claims have been established; and they are, accordingly, allowed.

Further objections to the account have been interposed in relation to the allegations in Schedules " C " and " G."  These objections are also sustained and the administratrix will be directed to file a supplemental account remedying her omissions.

Proceed accordingly.