Nat H. Hesttel, J.
Plaintiff corporation’s secretary-treasurer Froehlich testified that Gr & R Stationery Corporation was indebted to plaintiff for goods supplied, and on or about July 28, 1971, Froehlich arrived at Gr & R’s place of business along with a City Marshal to replevy against the goods of Gr & R. At that dramatic moment, Morris Stone, the president of Gr & R, telephoned the defendant Jerry Ortner, which thereupon led to a telephone conversation between Froehlich and the defendant.
Froehlich testified that he had never met the defendant before; that he had previously done business with him over the telephone and thus recognized his voice; that defendant told him on this occasion Stone was a friend, and that he had loaned money to Stone before; that defendant asked Froehlich to call off the replevin proceeding and stated: “I’ll guarantee you will get your money.’ ’ (Emphasis supplied.) Further, when defendant was asked by Froehlich “ will you put it in writing? ”, the defendant reportedly answered “ yes.”
Later in this nonjury trial, defendant testified that he received a telephone call from Stone late in July, 1971, to the effect that a City Marshal was at Stone’s place of business and that he was going to close up his store because he owed money to the plaintiff. The defendant admittedly spoke to the Marshal who told him that Stone would be out of business if he did not pay plaintiff’s outstanding bill. The defendant further stated he had done business with Stone for some six prior years, and he recalled his conversation with Froehlich on the telephone on *390 that day and told Froehlich: ‘ ‘ If you clean out the store, the store is. finished * * * the Stones are elderly people who are in tears * * * I’ll sign for them * * * they (the Stones) promised me they would make good.” The defendant also stated that he felt sorry for the Stones and that he was trying to help keep them in business. All of this is corroborative of Froehlich’s testimony.
In July, 1971, the proof shows G & R owed the plaintiff $2,439.80; and also owed the defendant approximately $400.
Following the reported telephone conversation, Froehlich released the City Marshal, the replevin proceeding was halted; and a series of six notes were executed dated July 29,1971, each in the sum of $406.63 or $406.64, payable to the order of the plaintiff and which were signed by Stone as president of G & R, due on the first of every month commencing September 1, 1971, and concluding on February 1, 1972. After Stone signed the notes, Froehlich sent them over to the defendant by messenger for his signature pursuant to the telephone advice of the defendant. Froehlich instructed an employee to type on the reverse of each note this legend: “In event of nonpayment then the total amount due of all notes shall become due and payable ” (emphasis supplied) over the blank, italicized line meant for defendant’s signature. When the messenger arrived at defendant’s place of business, another telephone conversation was had between Froehlich and the defendant in gist as follows:
Froehlich: “ Jerry do you consider this to be a guarantee? I’m no lawyer.”
Ortner: “ Tes, it’s a guarantee. If G & R doesn’t pay, I’ll guarantee payment if he doesn’t pay you. Don’t put the guy out of business.”
The six notes were introduced into evidence with defendant’s signature on the back of each note immediately below the quoted italicized legend (supra).
On September 1, 1971, the due date of the first of the notes, the same not being paid, an action was thereupon commenced by a complaint dated September 3, 1971, against the defendant indorser. No demand for payment was made first of G & R.
At the end of the trial, the court granted the plaintiff’s motion to dismiss the defendant’s first, second and third affirmative defenses based upon fraud, duress, and usury. The defendant had not sustained his burden with respect to these defenses.
“ When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense; and in regard to a holder the *391 defendant has the burden of establishing any and all defenses, not only in the first instance, but by a preponderance of the total evidence.” (42 N. Y. Jur., Negotiable Instruments, § 458, p. 87). With respect to the fourth affirmative defense that the signature of the defendant on the reverse of the notes “ does not legally constitute an endorsement or a promise to pay for the debt or default of the debtor herein,” the court reserved decision.
The defendant’s memorandum of law rightly asserts: “ The controversial point involved in this action is the statement (legend) on the back (of each note) ”. (See italicized legend, supra). The questions to be answered by the court are: Does the legend bind the defendant to do anything? Is the legend applicable to him? Does his signature make him liable as an indorser regardless of the ambiguous legend? Is the defendant an accommodation indorser? Is he a guarantor? (See [2], infra.) Can plaintiff introduce parol evidence to explain and prove the intent of the defendant in lending his signature to the notes? (See [1], infra.) May the plaintiff sue the defendant directly on the notes as an individual of primary liability rather than secondary thereunder without first going through the procedures of presentment, notice of dishonor and protest? (See [3] and [4], infra.)
The court answers all of these questions affirmatively — yes!
In the court’s opinion, we have a very strong case here in favor of the plaintiff. This was not the usual commercial negotiation back and forth between creditor and debtor with a third party becoming involved as a guarantor of the amount due in the event the debtor failed to make good on its primary liability under a promissory note. Here we have the plaintiff-creditor actually in the midst of protecting its rights to payment by levying on the goods of the debtor under process of law. This was not an idle threat of foreclosure — the closing down of the debtor’s business was actually in progress. At that moment of high drama, a friend of the debtor makes a plea to the creditor to exercise humane forbearance, halt the replevy proceeding and give the debtor six months to pay off the indebtedness. The creditor agrees to do so and then surrenders its immediate right to replevy relying upon the third party’s extremely strong and unequivocal oral representation to guarantee payment of the indebtedness and his stated willingness to put such a guarantee in writing.
It appears to the court that the creditor-plaintiff did not act to forbear upon any promise of payment by the debtor at the *392 moment of the execution of the notes. The debtor, at that point, was playing a very passive role in the negotiation to halt the replevin proceeding. Instead, the third-party friend, the defendant herein, came on very strong in his representations to the plaintiff’s agent and, in effect, created a new and primary relationship between the plaintiff and the defendant wherein the latter, in reality, became the primary obligor under the notes. It was upon defendant’s promise and guarantee to pay that the plaintiff primarily relied and acted upon to its subsequent detriment. Plaintiff had already written the debtor Gf & B off its credit book as a bad risk, and was insuring a return on its money by levying on the goods of the debtor. That remedy came to a close when the replevin proceeding was aborted by virtue of the defendant’s intervention and a new and primary debt came into being upon the defendant’s promise to pay. The circumstances surrounding this negotiation identify the defendant as being more in the guise of a comaker of these notes rather than an indorser.
In support of the court’s conclusion, the following authority is cited with respect to the issues raised in this action:
(1) PLAINTIFF CAN INTRODUCE PAROL EVIDENCE TO ESTABLISH THE INTENT OF THE DEFENDANT IN SIGNING THE NOTES. Parol evidence is admissible to show the liability and relationship between the immediate parties whose names appear on the note. (41 N. Y. Jur., Negotiable Instruments, § 396, p. 611; 42 N. Y. Jur., Negotiable Instruments, § 410, p. 29; also see Haddock, Blanchard & Co. v. Haddock, 192 N. Y. 499; Uniform Commercial Code, §§ 3-403, subd. [2], par. [b], 3-415, subd. [3].)
Parol evidence is also admissible to explain the meaning of ambiguous language when making an indorsement on a promissory note. (42 N. Y. Jur., Negotiable Instruments, § 443, p. 65.)
(2) REGARDLESS OF THE AMBIGUITY, ARTLESSNESS AND CLOUDED MEANING OF THE LEGEND ON THE REVERSE SIDE OF THE NOTES, THE DEFENDANT’S SIGNATURE ESTABLISHES HIM, AT THE VERY LEAST, AS AN ACCOMMODATION INDORSER WITH CONSEQUENT LIABILITY TO THE plaintiff. Defendant’s signature on the notes cannot be held to be an empty act without consequence or liability to the defendant. He put his signature on the notes as a guarantor of payment on condition that plaintiff would desist from exercising its swift and immediate right to replevy. The parol evidence adduced at the trial establishes the real and full meaning of the legend on the reverse of the notes. What it should read is:
“ In event of nonpayment then the total amount due of all notes *393 shall become due and payable by the indorser who guarantees payment thereof.”
‘1 An accommodation party * * * is one who signs the instrument in any capacity for the purpose of lending his name, that is, his credit, to another party to it * * * The accommodation party usually expects that not he, hut the accommodated party, will provide payment of the paper when it falls due. The obligation of the accommodation party is that of a surety [which includes a guarantor] on the instrument, and is supported by any consideration for which the instrument is taken before it is due.” (41 N. Y. Jur., Negotiable Instruments, § 9, p. 196, emphasis added, and § 287, p. 476; see, also, Brooklyn Bank v. Metropolitan Trust Co., 178 App. Div. 225; Artistic Greetings v. Sholom Greeting Card Co., 36 A D 2d 68; Uniform Commercial Code, § 3-415, subds. [1] and [4].)
The fact that the above-quoted definition indicates that the accommodation party ‘ ‘ usually ’ ’ expects the accommodated party to be primarily liable does not mean this is the rule in every case. The word ‘ ‘ usually ’ ’ does not mean ‘ ‘ invariably. ’ ’ This then leaves room for a showing of different intent and liability consequence by the proof of the unusual circumstances of a particular case. In this case, the court holds that the accommodation party, in actuality, by his voluntary and persuasive intervention set himself up for primary liability in the plaintiff’s mind. (See, infra; see, also, 41 N. Y. Jur., Negotiable Instruments, § 108, p. 316) wherein it is stated: “ An indorser * * * is not usually an original party to an instrument, but * * * becomes such after inception of the instrument * # * An indorser is liable according to his particular contract; but generally his liability is secondary and conditional to a certain degree. ’ ’ (Emphasis added.)
The accommodation indorser, a stranger to the instrument, i.e., not a maker, drawer, acceptor or payee, usually indorses his name prior to the delivery of the note to the payee in order “ to give credit to the principal obligor or maker, and often is one whom the payee himself requires as security before he will take the instrument or advance the funds represented thereby.” (41 N. Y. Jur., Negotiable Instruments, § 383, p. 588; § 394, pp. 605-606; § 287, p. 476).
1 ‘ The liability of an indorser is not a joint obligation with the maker, and he cannot compel the holder to sue the maker first * * * Thus, the holder may proceed against any or all indorsers.” (42 N. Y. Jur., Negotiable Instruments, § 430, p. 52; § 433, p. 54). “ The contract of the indorser is a new *394 and independent one, distinct from that of the maker.” (42 N. Y. Jur., Negotiable Instruments, § 433, p. 53, emphasis added). ‘ ‘ The holder of a note may sue both the maker and the indorser or either * * * and an indorser sued upon his contract of indorsement is absolutely liable thereon.” (Curtis v. Davidson, 215 N. Y. 395, 397; see Uniform Commercial Code, § 3-414, subd. [1] and comment 1).
(3) INASMUCH AS THE COURT CONCLUDES FROM THE EVIDENCE THAT DEFENDANT GUARANTEED PAYMENT OF THE NOTES, PLAINTIFF Dm NOT HAVE TO GO THROUGH THE PROCESS OF PRESENTMENT, DISHONOR and protest with the maker (g & r) of the notes. Presentment is not necessary to charge a guarantor. (42 N. Y. Jur., Negotiable Instruments, § 523, p. 165.) “ One who indorses a negotiable instrument in the form of a guaranty is liable according to whether the guaranty is of payment or of collection only. But in any event he is an indorser with his liability enlarged over that incurred by the ordinary indorser. [Brooklyn Bank v. Metropolitan Trust Co., 178 App. Div. 225.] Where words of guaranty are used, presentment, notice of dishonor, and protest are not necessary to charge the user.” (42 N. Y. Jur., Negotiable Instruments, § 440, p. 60, emphasis added).
(4) THE PLAINTIFF, IN THE COURT’S OPINION, HAD THE RIGHT-UNDER THE CIRCUMSTANCES OF THIS CASE-TO SUE THE DEFENDANT DIRECTLY AND PRIMARILY ON THESE NOTES NOT ONLY AS AN ACCOMMODATION indorser/guarantor BUT ALSO AS A DE FACTO COMAKER.
When the defendant interceded in the replevin proceeding and urged the plaintiff’s agent to forbear from completing the replevin, and the plaintiff did so relying on defendant’s guarantee of payment and credit, a new and primary agreement of indebtedness came into being characterized fully by all the essential elements of offer, acceptance and consideration as between the plaintiff and the defendant which became enforceable as such.
Forbearance to assert a right (the right to replevy here) whether it be legal or equitable is a sufficient and valuable consideration for an undertaking on commercial paper. (41 N. Y. Jur., Negotiable Instruments, § 183, p. 377; Uniform Commercial Code, § 3-408.)
Keep in mind that an accommodation indorser is only secondarily liable unless he makes a special agreement (such as proved in this case by parol evidence) which makes him primarily liable. (41 N. Y. Jur., Negotiable Instruments, § 395, p. 610).
“ The liability as an indorser imposed upon the irregular [accommodation] indorser by Negotiable Instruments Law § 114 *395 was regarded in New York as not conclusive or absolute but only prima facie and subject, as between the immediate parties — such as the payee and indorser before delivery * * * as among themselves — to parol proof of the intention of the parties. [Wittemann v. Sands, 238 N. Y. 434.] Thus, as between such parties, it could be shown by parol that there was an agreement that the indorser was not to be liable to the payee, or an agreement ¡that the indorser would be liable as maker and not only as a secondary party, [Matter of Futherer, 60 N. Y. S. 2d 741], or an agreement that the indorser would be liable to the maker or drawer. [Haddock, Blanchard & Co. v. Haddock, 192 N. Y. 499].” 41 N. Y. Jur., Negotiable Instruments, § 383, p. 589). Here, the indorser signed the notes before delivery to the payee which was the inducement and consideration for the payee to accept Gr & R’s notes. This transformed the defendant into a principal obligor under the circumstances of his case.
‘ ‘ A holder need not proceed against a maker before he can proceed against an indorser. ” (41 N. Y. Jur., Negotiable Instruments, § 385, p. 591.)
“ An indorser who guarantees payment waives all demand on the maker or drawee, and his liability becomes indistinguishable from that of a comaker [Uniform Commercial Code, § 3-416, Official Comment] * # * When words of guaranty are used, presentment, notice of dishonor, and protest are not necessary to charge the user [Uniform Commercial Code, § 3-416, subd. (5)].” (41 N. Y. Jur., Negotiable Instruments, § 394, pp. 607, 608).
The court in making its determination of the intention of the parties to this action that defendant intended to be held liable under the notes in any event, has a right to invoke the theorem of construction anent what the average businessman would have intended under the same circumstances. The court holds that the average businessman, under the same circumstances, would conclude that the guarantee of payment, in view of the forbearance of the plaintiff, was meant to create a primary obligation to pay a debt in order to induce such forbearance rather than an insulated secondary obligation of the usual indorser. The activist role of defendant in negotiating these notes imposed upon him, by operation of law, the responsibilities and obligations of a comaker even though he appeared to be an indorser as a matter of form.
“ An instrument should be considered as it would manifestly be understood by the average businessman, and the party signing it should be exonerated from liability when, according to *396 such construction, it appears that he did-not intend, and was not understood, to bind himself.” (42 N. Y. Jur., Negotiable Instruments, § 409, p. 27; emphasis added; New Georgia Nat. Bank v. Lippmann, 249 N. Y. 307). Here, the court is convinced that defendant intended to bind himself on the same level as the maker of the notes.
On the basis of this reasoning of the court, the plaintiff was not required to go against the maker, Gr & R, first in order to trigger liability on the part of the accommodation indorser. The creditor has the right to move directly against the accommodation party as it did here. (See Haskell v. Lason, 31 N. Y. S. 2d 729.)
Also see English v. Schlesinger (55 Misc. 584, 585) which holds: ‘ ‘ The very purpose of the accommodation would be defeated if knowledge of the fact that the responsible party was acting as an accommodator were a good defense in an action by a party who parted with value relying upon the credit of the accommodating party. ’ ’
An accommodation maker is liable primarily to the payee and not merely liable as a surety. (See Stricks v. Siegal, 138 Misc. 266.)
The fact that the defendant was an accommodation indorser without value is not ground for a dismissal of the complaint in an action on the notes. .(United Mercantile Agencies v. Spitz Cleaners, 133 N. Y. S. 2d 323.)
Accordingly, the fourth affirmative defense upon which decision was reserved is dismissed, and judgment is rendered in favor of the plaintiff on the notes for $2,439.80, plus interest, from September 1, 1971.